Dorothy A. NEELEY, Appellant,

v.

INDUSTRIAL COMMISSION OF MIS-
SOURI, DIVISION OF EMPLOYMENT
SECURITY, and Southwestern Bell Tele-
phone Company, Respondents.

No. 23916.

Kansas City Court of Appeals.

Missouri.

April 6, 1964.

———◆———

Tweedie Fisher, Jefferson City, Robert C. Eckhardt, Houston, Tex., for appellant.

Lloyd G. Poole, Jefferson City, for respondent Industrial Commission of Missouri.

John Mohler, Evans & Dixon, John R. Dixon, St. Louis, for respondent Southwestern Bell Telephone Co.

SAMUEL A. DEW, Special Commissioner.

The claimant, Mrs. Dorothy Neeley, an employee of the respondent Southwestern Bell Telephone Company at Jefferson City, Missouri, applied for and obtained- from her employer what was termed a "leave of absence" for one year because of her pregnancy. After the birth of her child and about six months before the expiration of the leave of absence, the claimant inquired of the Company if it had work for her and was told that there was none at the time. About six weeks before the expiration of the leave of absence she again applied to the Company for return to work and was granted her request. Meanwhile, however, she had filed claims for unemployment benefits for three previous weeks since the birth of her child, which claims are the basis of the present proceeding. The finding and decision of the respondent Industrial Commission having ruled her disqualified to make her claims, and such determination having been affirmed by the circuit court upon review, the claimant has appealed to this court.

For convenience the appellant will be referred to as the "Claimant", the respondent Industrial Commission of Missouri as the "Commission", and the respondent Southwestern Bell Telephone Company as the "Company".

■ This court is bound, as was the circuit court, by the facts as they were determined by the commission, if such findings were supported by competent and substantial evidence, in the absence of fraud. We are, therefore, confined in our consideration herein to questions of law. Section 288.210 RSMo 1959, as amended, Laws 1961, p. 435, Section 1, V.A.M.S.; Constitution of Missouri, Art. V, Section 22, V.A.M.S.

Insofar as necessary for our consideration of the legal issues presented in this appeal, the facts stated below as found by the majority opinion of the commission and as to which there was competent and substantial evidence, are deemed an adequate statement thereof. The claimant, who had worked for several years for the company, became pregnant, was suffering from headaches and other attendant symptoms, and was advised by her physician to quit work. She expected the birth of her child about December 2, 1960. She asked for and was given a leave of absence from July 31, 1960 to July 31, 1961. It was explained to her that the effect of the leave under the policy of the company was that, unlike a resignation, the leave would preserve for her the seniority rights and other credits accrued if she were returned to service for the company at or before the expiration of the leave of absence and under the conditions stated in the leave.

She was asked: "You left of your own volition? A. That's right".

The leave of absence introduced in evidence was in printed form with written insertions, and among other provisions, stated: "Employee plans to return to work at expiration of leave if work is available * * *. Leaves of absence do not carry any guarantee of employment * * *. Upon return to work on or before expiration of leave, only the first month of absence covered by the leave shall be credited in computing terms of employment. Eligible to death benefits under the provisions of the Plan during only the first month of absence covered by leave."

It was the policy of the company to permit an employee in a maternity case to return to work on or before the expiration of a year's leave of absence if an opening existed, and if the employee produced a doctor's certificate showing the employee to be able to resume work.

The evidence shows that claimant was a member of a union with which the company had a working "traffic" agreement covering certain aspects of operation, including "leaves of absence" granted to such employees. It was provided therein in part that "Insofar as the requirements of the service will permit, leaves of absence for good cause and for a reasonable length of time will be granted upon request. The intention of the employee with respect to return to work shall be established in writing between the employee and the company at the time the leave is granted and a copy shall be furnished the employee at the time the leave is granted".

There was further evidence and the commission so found that a policy rule of the company was adopted in 1958, which required the company supervisor when informed of the pregnancy of an employee, to discuss and to settle with her when she would cease work, to ascertain her intention whether to resign at such time or to ask for a leave of absence covering the period of her absence, and that if she requests a leave of absence, to obtain her intention as to returning to active service at its expiration as prescribed in previous provisions referred to. The rule further provided that such leaves, when granted, shall be for one year.

Further proof showed and the commission so found that there was a subsequent rule of the company adopted in 1959, providing that when such a maternity leave of absence is granted upon the request of either the employee or employer, the employee shall have the option to resign or to be granted a year's leave of absence.

Mrs. Neeley's child was born on December 6, 1960. She became able to work again about six weeks thereafter. She had been purchasing A. T. & T. stock through the company and was allowed six months' grace for payment on the purchase and she wished to keep up the payments. According to her evidence she obtained from her doctor a certificate that she was able to work and presented it about February 1, 1961, to the company with a request to return to work. The claimant and supervisor testified that the claimant was told that no work was then available with the company at that time, but that she could apply again later.

There was evidence that the claimant was physically able and willing to work during the weeks of March 5, 1961, March 18, 1961 and April 1, 1961. Having arranged for the care of her child, claimant made claims for those weeks for unemployment compensation. She contacted five employers for employment during the weeks in question without avail. The records of her applications for employment benefits show that she described herself as "temporarily" unemployed, and that she intended to return to work for the respondent company on April 1st. On June 17, 1961, Mrs. Neeley applied again to the company and was returned to her job. Since the date of her leave of absence, she had received no wages from the company

nor elsewhere, nor had she performed any services therefor.

The commission found the foregoing facts on competent and substantial evidence and ruled that the claimant had voluntarily left her employment with the company for the sole reason of her pregnancy and attendant symptoms; that it was expressly agreed that the leave of absence did not guarantee reemployment but by reason of it and if she were accepted for return to work at or prior to its expiration, the company would preserve for her seniority rights and credits accrued at the date of the leave. The commission further found under such proof that claimant had left her employment without good cause attributable to her employment or her employer; that she was not available during the weeks for which she made claim because she did not make an earnest and active search for work as required by law. The decision was that claimant was disqualified for waiting week period or benefits until she had earned wages equal to ten times her weekly benefit amount after July 31, 1960.

Upon review of the findings and decision of the commission, the circuit court found that such decision "holding the claimant disqualified for waiting period for benefits until she has earned wages equal to ten times her weekly benefit amount after July 31, 1960, because she left her work voluntarily on July 31, 1960, without good cause attributable to her work or to her employer, is supported by competent and substantial evidence upon the whole record, and that the law was properly applied by the Industrial Commission of Missouri to the facts found by it". The court thereupon ordered and adjudged that such decision so disqualifying Mrs. Neeley "for waiting week credit or benefits until she has earned wages equal to ten times her weekly benefit amount after July 31, 1960, should be and the same is hereby in all respects affirmed". The costs were assessed against the claimant.

In a judicial review of a decision of the Industrial Commission of Missouri the court may not substitute its judgment for that of the commission but must determine if the commission could reasonably have reached the results of its decision upon the whole record, and the court must set aside any decision clearly against the weight of the evidence. The court must consider the evidence in the light most favorable to the findings and decision of the commission, and all reasonable inferences therefrom, and must disregard all opposing and unfavorable evidence. Producers Produce Co. v. Industrial Commission of Missouri et al., 365 Mo. 996, 291 S.W.2d 166, 173; Poggemoeller et al. v. Industrial Commission of Missouri et al., Mo.App., 371 S.W.2d 488, 498.

The purpose of the Employment Security Law is stated in Section 288.020, R.S.Mo. 1959, V.A.M.S. to be " * * * the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own". Among the numerous provisions of Chapter 288 there are certain requirements specified to constitute eligibility for benefits under the Employment Security Law. "Employment" means: "Service, * * * performed for wages or under any contract of hire, written or oral, expressed or implied * * *". Section 288.034. "A claimant who is unemployed and has been determined to be an insured worker shall be eligible for benefits for any week only if the deputy finds that * * * (2) He is able to work and is available to work; provided, however, that no person shall be deemed available for work unless he has been and is actively and earnestly seeking work * * *". Section 288.040. "Notwithstanding the other provisions of this law a claimant shall be disqualified for waiting week credit or benefits until after he has earned wages equal to ten times his weekly benefit amount if the deputy finds (1) That he has left his work voluntarily without good cause attributable to his work

or to his employer * * *". Section 288.050, subd. 1. "Waiting week" is defined by Section 280.030, subd. 23 to be "the first week of unemployment for which a claim is allowed in a benefit year". The waiting period is designed to protect the insurance against petty losses and to facilitate administration of the program. Rozier, 15 V.A.M.S. p. 421.

The claimant herein contends that the circuit court erred in holding that there was competent and substantial evidence to support the commission's decision that she voluntarily left her work on July 31, 1960 without good cause attributable to her work and was disqualified to claim unemployment benefits until she had earned wages equal to ten times her weekly benefit amount after that date. Her contention is based on two assigned theories: (1) that her status as an employee continued when she left her work on pregnancy leave and (2) that there was no competent and substantial evidence upon the whole record to support any other conclusion than that the leave of absence "bridged" the period of pregnancy, after which she immediately sought actively and earnestly for work, and that she was available therefor.

■ The claimant was either unemployed or employed when making her applications for unemployment compensation. If unemployed, she was required to meet the conditions imposed by the statutes as to involuntary severance from her previous work and other requirements referred to in the statutes, or, if she contends she was employed at such times, the consequence of which, if true, would be that she would be expressly disqualified by the law. A person may not at the same time occupy the status of one employed and that of one unemployed when seeking pecuniary benefits provided by law for the latter only.

■ The reserve set up and maintained under the Employment Security Law of Missouri is, as stated, expressly for the use and benefit of persons who are unemployed

due to no fault of their own. Section 288.-020. The word "fault" as used in that section is not limited to "conduct of the employee which is blameworthy, culpable, wrongful, or worthy of censure, but means failure of volition. * * *"; that "an employee ordinarily is deemed to have left his work voluntarily when he has left of his own motion or accord as opposed to a discharge, dismissal, or layoff by the employer, or other action by the employer severing relations with his employees". 81 C.J.S. Social Security and Public Welfare §§ 161, 164, pp. 244, 248, 249; Bussmann Mfg. Co. v. Industrial Commission, Mo. App., 335 S.W.2d 456, 461. To sustain the commission's ruling that the claimant left her employment with the company voluntarily there was competent and substantial evidence from the whole record and the decision of the commission so holding was a reasonable conclusion.

■ The claimant's several applications for work over the period of nearly a month and her representations on her claim cards for benefits as being "temporarily" unemployed and intending to return to her work with the company on April 1, 1961, indicating that she was seeking temporary employment only, constituted sufficient grounds under the statutes for the ruling of the commission that claimant did not seek reemployment actively and earnestly. Section 288.040, subd. 1(2).

As to claimant's next assertion that there was no competent or substantial evidence to support any conclusion other than that the pregnancy leave of absence "bridged" the pregnancy incapacity, and that immediately thereafter she sought work actively and earnestly and was available for work, it is obvious on the face of the written leave of absence in evidence that the only method of affecting its expiration was (1) by lapse of the entire maximum period stated or (2) at or before such expiration the claimant should become available for work, should make application to the company for return to work, that an opening

**206**

for such reemployment existed and that her application for reemployment be accepted. There is no provision in the leave of absence that would authorize the claimant, at will, prior to the expiration date of the leave, to terminate her unemployment status with the company without a mutual agreement therefor with the company. Nor would such status be affected by the policy of the company to preserve for the claimant her earned seniority rights and credits if she did return to reemployment with the company under the conditions of the leave of absence.

It is our conclusion that there was competent and substantial evidence to support the findings and decision of the commission; that its decision was correct under the law and that the judgment of the circuit court so affirming it should accordingly be affirmed. The Special Commissioner so recommends.

The foregoing opinion by SAMUEL A. DEW, Special Commissioner, is adopted as the opinion of the Court. All concur.