[Civ. No. 38772. First Dist., Div. Two. Oct. 27, 1976.]

JOYANNE DOUGLAS, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS
BOARD et al., Defendants and Respondents.

**COUNSEL**

Atchison, Haile & Haight and William K. Rentz for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Harold W. Teasdale and Eleanor Nisperos, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**TAYLOR, P. J.**—Plaintiff, Joyanne Douglas (Douglas), sought an administrative writ of mandate (Code Civ. Proc., § 1094.5) directing the California Unemployment Insurance Appeals Board (Board) to set aside its decision denying her unemployment benefits. On this appeal from the judgment denying the writ, she contends that: 1) the court erred and exceeded its jurisdiction in making findings that differed from those of the Board, and in failing to make findings on all of the material issues; 2) the court's findings do not support its judgment; and 3) the court erred on the merits as she left her employment not "voluntarily," but for "good cause," as required by Unemployment Insurance Code section 1256,[1] since she was deprived by her employer of the opportunity to make a voluntary choice between the leave of absence she had requested and the permanent termination with a conditional rehire that occurred. We note that the instant matter was determined below prior to *Lewis* v. *Unemployment Ins. Appeals Bd.*, 56 Cal.App.3d 729 [128 Cal.Rptr. 795] (decided Mar. 30, 1976; no petn. for hg. filed), in which this court (Division Four) for the first time clarified the law of this state as to section 1256, and distinguished between leaves of absence and voluntary terminations. We have concluded that all of Douglas' contentions are substantially without merit, and that pursuant to *Lewis, supra,* the judgment must be affirmed.

Douglas appealed to a Board referee pursuant to section 1328; after a hearing, the referee filed a written decision denying her application on the ground that she had been the "moving party" by the initial request for a leave of absence. Upon her further appeal to the Board, as permitted by section 1336, the Board entered a decision, adopting the referee's statement of facts, and his reasons, and affirmed his decision. After thus exhausting her administrative remedy, Douglas commenced the instant proceedings in the superior court.

---

[1] Except where otherwise expressly indicated, all statutory references herein are to the Unemployment Insurance Code. Section 1256 provides, in successive paragraphs, as indicated, and in pertinent part:

"1256. An individual is disqualified for unemployment compensation benefits if the director finds that he *left his most recent work voluntarily without good cause* or that he has been discharged for misconduct connected with his most recent work.

"An individual is *presumed* to have been discharged for reasons other than misconduct in connection with his work and *not to have voluntarily left his work without good cause* unless his employer has given written notice to the contrary to the director within five days after the termination of service, setting forth facts sufficient to overcome the presumption." (Italics supplied.)

The administrative record reveals the following pertinent facts:

Douglas was last employed by the Community Hospital of Santa Cruz as a director of its department of social services for two years, terminating June 11, 1974.

On May 24, 1974, she submitted a request for a leave of absence commencing June 15, for the purpose of accompanying her husband to the State of Washington, where he was assigned for three months. When she received no response to her proposal, she requested a conference with the hospital administrator. The conference was not arranged before she left work on June 11. If the administrator had refused to grant her request, she would not have gone to Washington with her family.

Prior to leaving work on June 11, Douglas was given a photostatic copy of a note written by the administrator which stated that he did not wish to risk part-time leadership during her absence. The note also instructed the personnel officer to hire the new applicant and if the applicant did not work out and Douglas was available for work on her return from Washington, her position would still be available to her.

Although Douglas was not granted a conference with her administrator or given the opportunity to withdraw her request for a leave of absence, the evidence establishes that her leave of absence was granted subject to the condition that she would be reinstated only if her replacement was not satisfactory. Douglas correctly assumed that the leave of absence was granted subject to this condition. Since the employer was willing to permit her to work after June 11, 1974, but she desired to accompany her husband to Washington, she is the moving party, and the issue is whether she left work voluntarily with good cause.

Douglas filed her claim for unemployment insurance benefits immediately upon arriving in Washington, about June 16, 1974. After receiving an unfavorable determination, she wrote to her former employer and was informed that her replacement was working out satisfactorily and that the employer did not intend to make any changes at that time.

In making his determination, the referee relied on prior Board decisions, which held that in determining whether there has been a voluntary leaving or discharge under section 1256, it must first be determined who was the moving party in the termination. If the claimant

leaves the employment while continued work is available, then the claimant is the moving party. On the other hand, if the employer refuses to permit an individual to continue working, although the individual is ready, willing and able to do so, then the employer is the moving party. On this basis, the referee concluded that Douglas was the moving party, and that she was under no compulsion to accompany her husband to Washington, as indicated by the fact that she would not have gone with her husband if her request for a leave of absence had been denied.

The referee concluded that, therefore, Douglas had left her most recent work voluntarily without good cause, within the meaning of section 1256 and was, therefore, disqualified pursuant to section 1256. The referee expressly did not decide the issue of Douglas' eligibility for benefits pursuant to sections 1264[2] and 1253, subdivision (c).

We turn first to the issues concerning the findings made by the court below, as one of Douglas' major contentions on appeal is that the court exceeded its jurisdiction and failed to make findings on all of the material issues. As a vested right for unemployment benefits is affected by the trial court's judgment, the independent judgment test has long been applicable (*Thomas* v. *California Emp. Stab. Com.*, 39 Cal.2d 501 [247 P.2d 561]; cf. *Strumsky* v. *San Diego County Employees Retirement Assn.*, 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]; *Bixby* v. *Pierno*, 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242]). The subsequent proceedings before the superior court are a limited trial de novo; thereafter, any party may request findings of fact and conclusions of law, pursuant to Code of Civil Procedure section 632 and California Rules of Court, rule 232 (*Hadley* v. *Superior Court*, 29 Cal.App.3d 389 [105 Cal.Rptr. 500]).

The record indicates that Douglas objected to the findings and conclusions prepared by the Board and submitted her proposed counterfindings and corrections to the conclusions. Subsequently, on its own

---

[2]In *Boren* v. *Department of Employment Dev.*, 59 Cal.App.3d 250 [130 Cal.Rptr. 683] (decided June 17, 1976), section 1264, which disqualifies any person leaving a job because of marital or domestic duties and who does not supply the family's major support, was held invalid as a denial of equal protection as the statute established a sex-based disqualification and unconstitutionally discriminated against female applicants. No petition for a hearing in the state Supreme Court was ever filed in *Boren, supra.* Douglas erroneously refers to section 1264 in her opening brief.

motion, the court ordered a hearing on her objections pursuant to California Rules of Court, rule 232(f) and then entered its findings and conclusions that were substantially identical to those made by the referee as to the basic facts set forth above.

In addition, the court found that:[3]

Douglas requested the leave of absence for her own personal pleasure, to accompany her husband and her children to Washington, where her husband was to be temporarily assigned for three months.

Neither her husband nor his employer required that she or the children accompany him to his temporary job assignment in Washington, although her husband's company was willing to pay the family's round trip fares should they decide to do so.

*Douglas knew that her services were indispensable to her employer and that replacements would have to be hired to take her place.* She, therefore, submitted with her request for leave of absence a proposal designating persons and methods that would adequately furnish the services she would have rendered had she not been on leave. When she did not receive a response to her proposal, she requested a conference with the hospital administrator. *The conference was not arranged until the morning of June 11, 1974, when the administrator stated that he had not yet decided to approve or disapprove her request.* Prior to leaving work on June 11, Douglas was given a photostatic copy of a note written by the administrator which indicated that he did not wish to risk part-time leadership during her absence and instructed the personnel officer to hire a new applicant; if the applicant later proved to be unsatisfactory and Douglas was available for work after her return from Washington, then she would be offered her former position and rehired.

*After being informed of the administrator's decision regarding her request and proposal, Douglas did not rescind her request, but followed through with her plans and accompanied her family to Washington.*

Douglas' employer did not give the Employment Development Department notice that Douglas had voluntarily left her work without

---

[3]We have underscored the variations in the court's findings to which Douglas specifically objected below, and now urges were beyond the jurisdiction of the court.

good cause within five days after the termination of her service, as provided for by section 1256.

The court then entered the following conclusions of law:

In exercising its independent judgment upon the evidence presented in the administrative record, the court is not bound by the findings and determination of the referee or of the Board;

An employee who voluntarily leaves her job without good cause is ineligible to receive unemployment insurance benefits, pursuant to section 1256;

An employee is presumed not to have voluntarily left his or her work without good cause unless his employer has given written notice to the contrary to the Employment Development Department within five days after the termination of the employee's service and has set forth in the notice facts sufficient to overcome the presumption. This presumption is a rebuttable presumption which imposes on the employer or the department the burden of proving by a preponderance of the evidence that the claimant quit work voluntarily without good cause;

An employee who requests a leave of absence (a) without securing an unconditional guarantee that she may return to her employment at the expiration of the leave of absence, (b) knowing that her services are necessary to the smooth and efficient operation of her employer's business, and (c) while continued work is available for her to do, voluntarily quits her employment within the meaning of section 1256;

Pursuit of personal enjoyment does not constitute good cause for the termination of employment within the meaning of section 1256;

A preponderance of the evidence shows that while work was available and her employer needed her services, Douglas took her leave of absence and without securing an unconditional guarantee that she could return at the expiration of her leave. A preponderance of the evidence further shows that she took her leave for reasons of personal pleasure, namely, to accompany her husband to an out-of-state destination, while her spouse was located on a temporary job assignment, even though her presence was not required;

Accordingly, Douglas voluntarily terminated her employment and consequently left her work without good cause, and under section 1256 is disqualified from receiving unemployment compensation benefits. The Board, therefore, did not act in excess of or without jurisdiction and did not abuse its discretion in denying Douglas' application.

■ It is readily apparent from the above that, contrary to Douglas' contentions, the trial court did not exceed its jurisdiction or err in making findings that differed slightly from those of the Board. Section 410, set forth, so far as pertinent, below,[4] and the authorities cited above as to the application of the independent judgment test, expressly so indicate. Further, the court's findings fulfill the requirement of enabling both parties to determine whether and on what basis to seek judicial review (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles,* 11 Cal.3d 506, 517 [113 Cal.Rptr. 836, 522 P.2d 12]; *Hadley* v. *City of Ontario,* 43 Cal.App.3d 121, 127 [117 Cal.Rptr. 513]; Code Civ. Proc., § 1094.5).

As to Douglas' assertion of major discrepancies between the Board's findings and those of the court, none are of major significance, as she apparently admits in her closing brief. Her knowledge of the need for replacements during her leave is demonstrated by the proposal she submitted to her employer along with her request for a leave on May 24. As to whether or not there was a conference[5] (as the court found) or none (as the Board found) is of little significance in the absence of any contractual or other requirement for such a procedure within a specified period of time or any indication that Douglas' employment was for a fixed term so that her employer did not reserve the right to terminate her position at will. Rather, it appears that Douglas' employment had no specified term and was, therefore, terminable "at the will of either party on notice[6] to the other." (Lab. Code, § 2922.)

As to Douglas' contention that the court should have reviewed the Board's decision instead of the substantive facts, the record indicates that

---

[4]Section 410: "A decision of the appeals board is final, except for such action as may be taken by judicial tribunal as permitted or required by law."

[5]Douglas stated at the hearing that on the morning of June 11, her last day of work, she went in to tell the hospital administrator, Mr. Sundean, of the plans she had made for coverage during her absence and was told that he had not yet decided as to what he wanted to do while she was gone.

[6]In fact, the administrative record indicates that Douglas gave such notice on May 24 and submitted her resignation, effective June 7. However, the resignation was not accepted by the employer and she continued to work until June 11. Accordingly, it was properly ignored by both the Board and the court below.

the court did so since it found that the preponderance of the evidence supported the Board's decision.

While it would no doubt have been better personnel procedure for the employer to have granted Douglas a conference, as requested, or given her a longer period of notice as to its decision to decline her plan for a temporary substitute and to deny her request for a leave of absence, the administrative record indicates that Douglas was informed of her employer's decision before she left. The court's finding that with knowledge of the employer's decision Douglas did not rescind her request, is simply a statement of what, in fact, occurred. However, insofar as it implies that Douglas had the opportunity to withdraw her request for a leave when the Board's finding was directly to the contrary, it is erroneous and not supported by the record. But we conclude, for the reason set forth below, that the error is of no consequence. Equally inconsequential are the facts that the court ignored the Board's findings that the employer was willing to permit Douglas to work after June 11, 1974, but for her desire to accompany her husband to Washington, and made no findings on the moot issue of her availability.

We do not deem it necessary to discuss Douglas' contention concerning the definition of voluntary used by the court below, as the parties agree that the law on the subject has been superseded by this court's decision in *Lewis*. The court there opined that the theory that " 'An employee who obtains a leave of absence without securing an unconditional guarantee that he may return to his employment at the expiration of the leave of absence voluntarily quits his employment within the meaning of . . . section 1256,' " thus inflexibly stated, *is invalid because it fails* to comprehend *the material distinction between suspension of work and termination of employment.*

As indicated above, the identical inadequate approach was used by the court below in the instant case, although the court also added the facts of Douglas' knowledge of the necessity of the continuation of her services and the availability of work. However, unlike *Lewis*, we do not think the facts of the instant case require a reversal because of the application of this incomplete approach to the circumstances under which Douglas left her employment.

As further indicated in *Lewis, supra,* at page 738, a person will be " 'disqualified' for benefits under section 1256 if his unemployment is attributable to his own 'fault.' The element of 'fault' is conceived in

terms of the proximate cause of his unemployment *and whether it is the result of his own volition.* It is decisive of his eligibility under the section because the unemployment compensation insurance law must be interpreted in light of its purposes, which are to provide benefits 'for persons unemployed *through no fault of their own,* and to reduce *involuntary* unemployment. . . .' (§ 100 [italics added]; *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 758 [151 P.2d 233, 155 A.L.R. 405]; *Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board* (1960) 178 Cal.App.2d 263, 269-270 [3 Cal.Rptr. 37]; *Perales* v. *Department of Human Resources Dev., supra,* 32 Cal.App.3d 332 at pp. 335-336 [108 Cal.Rptr. 167]. For the same 'volitional' test of eligibility as applied in different—but related—factual and statutory contexts, see *Coast Packing Co.* v. *Cal. Unemp. Ins. Appeals Bd.* (1966) 64 Cal.2d 76, 77-80 [48 Cal.Rptr. 854, 410 P.2d 358] [work stoppage in a 'trade dispute' covered in § 1262]; *Rowe* v. *Hansen* (1974) 41 Cal.App.3d 512, 520-521 [116 Cal.Rptr. 16] ['misconduct' under § 1256].)

"It necessarily follows that an employee-claimant may not be 'disqualified' for benefits under section 1256 if there has been a termination of his employment which is *not* attributable to his own 'fault.' "

This court then distinguished between: 1) a "true" leave of absence, mutually agreed upon between the employer and employee, where only the occupancy of the position but not the employment is suspended and the employee is left with certain rights, and hence does not voluntarily quit his job; and 2) a termination with a conditional rehire, if there is a job available.

This court, however, further pointed out at page 741, in the reference to the precise situation of Douglas, namely, an employee who takes a leave "voluntarily and for purely personal reasons only . . . is 'disqualified for unemployment compensation benefits' during the leave period because of the crucial fact that he 'left his most recent work voluntarily without good cause.' (§ 1256; *Perales* v. *Department of Human Resources Dev., supra,* 32 Cal.App.3d 332 at pp. 336-337; *Zorrero* v. *Unemployment Ins. Appeals Bd., supra,* 47 Cal.App.3d 434 at pp. 437-440 [120 Cal.Rptr. 855].) If he is denied reemployment in another job at the end of the period, the disqualification persists because the former job was terminated for the same reason. This result is required because, the termination having initially been effected 'voluntarily without good cause' upon the employee's part, his consequent unem-

ployment at any time thereafter is attributable to his own 'fault.' (See § 100, quoted *supra*; *Perales* v. *Department of Human Resources Dev., supra,* at pp. 335-336.)"

The instant case falls squarely within the first example of *Lewis, supra.* Douglas sought a leave for purely personal reasons and attempted to dictate its condition to her employer. From her employer's failure to respond to her proposal as late as the morning of her last day, she could only reasonably have inferred that her request would not be granted. She at no time indicated to her employer that if her request was not granted, she would stay; she could have done so at any time or at least immediately after receiving the notice of termination. Instead, the undisputed facts indicate that she proceeded with her plans to accompany her family to Washington.

Affirmed.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied November 26, 1976, and appellant's petition for a hearing by the Supreme Court was denied December 22, 1976.