**DIVISION OF EMPLOYMENT SECURITY, Appellant,**

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION, International Harvester Company and Beverly K. Cowing, Respondents.**

**No. WD 31986.**

Missouri Court of Appeals, Western District.

May 26, 1981.

Modified June 2, 1981.

Rick V. Morris & Susan P. Haag, Jefferson City, for appellant.

Catherine J. Barrie, Jefferson City, for Labor & Indus. Relations Comm'n of Mo.

Arlyn D. Haxton, Kansas City, for Intern. Harvester Co.

Paul D. Cowing, Kansas City, for Beverly K. Cowing.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

MANFORD, Presiding Judge.

This is an appeal from a circuit court judgment affirming (without hearing) the ruling of the Missouri Labor and Industrial Relations Commission, which declared an employee eligible for unemployment compensation benefits. The judgment is reversed with instructions.

This cause originates and is governed by Chapter 288, RSMo 1978, the Missouri Employment Security Law. Judicial review is governed by § 288.210 and absent any question of law, review is limited to the determination of whether or not, upon the

whole record, the decision of the Commission is supported by competent and substantial evidence and whether or not the Commission could have reasonably made its findings and reached the result it in fact reached, see *LaPlante v. Industrial Commission,* 367 S.W.2d 24, 27 (Mo.App.1963). Neither the circuit court nor this court is permitted to substitute its own judgment upon the evidence in lieu of the judgment of the Commission. The courts are to consider all the evidence, along with all reasonable inferences therefrom, in a light most favorable to the Commission's ruling; and are not to set aside the ruling unless it is contrary to the overwhelming weight of the evidence, see *Beal v. Industrial Commission,* 535 S.W.2d 450 (Mo.App.1975); *Union-May-Stern Co. v. Industrial Com'n,* 273 S.W.2d 766 (Mo.App.1954) and *Meyer v. Industrial Com'n of Missouri,* 240 Mo.App. 1022, 223 S.W.2d 835 (1949). Further review is upon the record of the administrative agency and not the circuit court, see *Ingram v. Civil Service Commission,* 584 S.W.2d 633 (Mo. App.1979).

■ This court, however, is not bound by the Commission's conclusions of law, including the interpretation of statutes. It is the duty of the courts to interpret and determine legislative intent of the Missouri Employment Security Law, see *Sain v. Labor and Industrial Relations Com'n,* 564 S.W.2d 59 (Mo.App.1978); *Bussmann Manufacturing Co. v. Industrial Com'n,* 335 S.W.2d 456 (Mo.App.1960) and *Bussmann Manufacturing Co. v. Industrial Com'n of Missouri,* 327 S.W.2d 487 (Mo.App.1959).

■ The purpose of Missouri's Employment Security Law, § 288.020(2), RSMo 1978, is to require a liberal construction and to benefit "persons unemployed through no fault of their own ..." *Beal v. Industrial Commission, supra,* at 458. See also § 288.-020(1). The term "fault" as used within the statute has been interpreted as being not limited to "conduct of the employee which is blameworthy, culpable, wrongful or worthy of censure, but means failure of volition." See *Neeley v. Industrial Com'n of Mo., Div. of Emp. Sec.,* 379 S.W.2d 201, 205

(Mo.App.1964). An employee is deemed to have left work voluntarily when *he leaves of his own accord as opposed to his being discharged, dismissed or subjected to layoff by the employer,* see *Neeley, supra.* The benefits under § 288.050.1(1) are limited and by virtue thereof, its provisions relating to disqualification are to be strictly construed. See *Sain, Bussmann,* and *Citizens Bank of Shelbyville v. Industrial Com'n,* 428 S.W.2d 895 (Mo.App.1968).

In this case, the claimant employee was employed for three years by the International Harvester Company as an accounts receivable clerk. On September 1, 1978, she requested a leave of absence so she could tend to her husband, who was seriously ill. She told an employer representative that she wanted to continue working. However, due to the anticipated irregularity or disruption of regular work days, it was suggested to her that she take a leave of absence. She expressed a willingness to continue regular employment to retain her group insurance benefits.

On September 25, 1978, she received through the mail a form captioned "Request for Leave of Absence". This form was not signed by any employer representative. The form also contained the following wording,

"... and that my return to work will be subject to employment conditions existing at the time of such return."

This form indicated that the period of the leave of absence was from September 11, 1978 to September 1, 1979. A few days later, on September 30, 1978, the employee received a letter from the employer which informed her that she had been placed on personal leave of absence from September 11, 1978 to December 31, 1978. The letter also contained the following sentence: "Your return is *contingent* upon your availability and an opening in accounting." Enclosed with that letter was another leave request form containing the dates of September 11, 1978 to December 31, 1978. She did not return this second form because the accompanying letter informed her of the leave of absence.

Under the employer's policy concerning leaves of absence, when an employee was granted a leave, the employee was no longer an active employee but did have reinstatement rights. Had there been a job opening on December 31, 1978, the employee would have been rehired without loss or disruption of continued service with the employer.

In the period between September 11, 1978 and December 31, 1978, the employee retained vacation, pension, seniority and insurance benefit rights. After the first 30 days of leave, she was required to make partial payment of the insurance premium (which she did) to maintain her insurance benefits. While the employee retained (during the leave period) certain employee rights, the employer could not expressly guarantee the availability of a job position. An employer representative described this leave as ". . . a termination with reinstatement rights", but stated that he might not have expressed that statement to the employee in those precise words.

During the period from September 11, 1978 to November 26, 1978, the employee had discussions by phone with a representative of the employer. The employee testified that these discussions included her expression or indication that she would like to return to work, the assurance by the employer's representative that a position would be available by December 1, 1978, (because of an anticipated maternity leave by another employee) and the fact that the employer representative would "probably more than likely have a position open" by December 1, 1978 and that she could return to work then.

The testimony of the employer's representative concerning his discussions with the employee was less certain. He testified he had a general discussion with the employee about her returning to work on an indefinite date if a job was available; however, he felt that there was nothing said about her returning to a specific position. He stated that he could have told the employee that she could take the job of an employee expected to take maternity leave, although he did not recall any specific discussion of the subject. He further testified that he "more than likely" intended to return the employee to work and at the time, thought it possible that the company would have a position for her.

On November 26, 1978, the employee wrote the employer representative, informing him that she was available for work and requesting that she be notified when a position became available. Accompanying the letter was a check for the payment of insurance premiums to ensure continuation of insurance coverage should the leave of absence continue past December 1, 1978. On January 1, 1979, she received a notice which advised her of "no position available" and that she was terminated. On December 31, 1978, at the end of her leave of absence, her position was not available and the employee expected to take maternity leave was still working.

The employee then filed a claim for unemployment compensation. On January 25, 1979, a deputy for the Division of Employment Security ruled the employee disqualified for benefits until she had earned wages equal to ten times her weekly benefit after December 31, 1978, in conformity with the statute. The deputy also found that the employee had left work voluntarily without good cause attributable to her work or to her employer. The employee filed a timely appeal with the Division, which sustained the deputy's ruling after a hearing on the appeal. On March 12, 1979, the employee filed her application for review by the Commission. On January 28, 1980, the Commission reversed the decision of the Division and declared the employee qualified for benefits. The Division then filed a petition for judicial review with the 16th Judicial Circuit Court. The circuit court affirmed the Commission ruling without hearing. The Division then lodged this appeal.

■ The question on this appeal may be summarized thusly: Is an employee who takes a leave of absence, the terms of which provide that at the end of the period, the return to work is contingent upon the availability of a job, deemed to have voluntarily

left the job without cause attributable to the job or employer, for the purpose of disqualification for unemployment benefits claimed for a period after the employer failed to reemploy at the expiration of the leave period?

As stated above, this court cannot substitute its judgment for that of the Commission wherein the evidence is competent and substantial to support the Commission's findings. However, this review limitation has no application to conclusions of law.

The above question is interrelated with the single point raised on this appeal, which alleges that the trial court erred in affirming the Commission's decision which declared that an employee who voluntarily ceased work with no guarantee of reemployment was *not* disqualified for unemployment benefits pursuant to § 288.050.-1(1), RSMo 1978 because the decision was contrary to the statute and the applicable case authority.

The Division challenges the Commission's decision upon the law. The interpretation of the applicable statutes and the accompanying legislative intent is within the purview of the courts, see *Sain* and *Bussmann*, *supra*. Appellant argues that an employee who takes a voluntary leave of absence without guarantee of reemployment has left work "voluntarily without good cause attributable to work or to his employer" pursuant to § 288.050.1(1) which reads:

"*288.050. Benefits denied unemployed workers, when.*—1. Notwithstanding the other provisions of this law a claimant shall be disqualified for waiting week credit or benefits until after he has earned wages equal to ten times his weekly benefit amount if the deputy finds

(1) That he has left his work voluntarily without good cause attributable to his work or to his employer; . . ."

Appellant argues that since the employee's leave of absence contained no guarantee of reemployment, that the employment relationship terminated in September, 1978, and that the reasons for leaving work were personal (as opposed to her leaving for rea-

sons attributable to her work or to her employer), the employee was disqualified from receiving benefits. Appellant further argues that since the employment relationship was terminated in September, 1978, the employer could not have terminated the employee on December 31, 1978; and regardless of what action was taken by the employer upon the latter date, it was of no significance in determining whether the employee was eligible to receive benefits.

The answer to the question set forth above and hence the disposition of appellant's alleged error turns upon the interpretation given the phrase "leave of absence" when considered alone and conjunctively with the intent and interpretation of § 288.-050.1(1).

Leave of absence has no statutory definition in our state. Our Supreme Court has defined it as a "temporary absence from duty with an intention to return during which time remuneration is suspended." See *State ex rel. McGaughey v. Grayston*, 349 Mo. 700, 163 S.W.2d 335, 341 (Mo.banc 1942), cited with approval in *Lauderdale v. Division of Employment Security*, 605 S.W.2d 174, 177 (Mo.App.1980). In *Lauderdale*, at 177, the court stated that there " 'is a continuity of the employment status' and the employee expects to return at the end of the leave period."

Appellant argues that because the employee herein was given no guarantee of a return to work, the employee was not granted a "leave of absence" as that term was used and employed in *Lauderdale*. A reading of *Lauderdale* makes it clear that the court in that case did not graft onto the accepted definition of "leave of absence" the requirement of a guarantee; however, it must be pointed out that the court was contending with a determination of the question upon a factual basis which included an understanding between the employer and employee that the latter could return to work at the end of the leave period. Even in view of *Lauderdale*, it could be argued that a guarantee of reemployment is an integral element of a true leave of absence.

In contrast to the above consideration that a guarantee is an integral element of a true leave of absence, if one argues that a leave of absence (for purposes of determining eligibility for benefits) need only contain a conditional expectation of reemployment, the result is that the employer is cast in the role of insurer. To state it another way, if such a conditional expectation is all that is necessary, then the employer must either rehire the employee, even though there is no available position, or provide unemployment compensation benefits.

Appellant's argument finds support in the case of *Neeley, supra.* In that case, the employee was granted a maternity leave of absence which contained no guarantee of reemployment. The "leave" did preserve seniority rights and insurance benefits. The employee, some six months before her expected "leave", expressed to her employer her desire to return to work. The employee was informed that no work was available. Subsequent to these events and some six weeks prior to the expiration of the "leave" period, the employee was returned to work. The employee filed a claim for benefits for three weeks during the leave period. The court ruled the employee was disqualified upon a finding that the employee had voluntarily left work without cause attributable to her work or employer. The court, at 205, declared:

> "The claimant was either unemployed or employed when making her applications for unemployment compensation. If unemployed, she was required to meet the conditions imposed by the statutes as to involuntary severance . . . or, if she contends she was employed at such times, the consequence of which, if true, would be that she would be expressly disqualified by law. A person may not at the same time occupy the status of one employed and that of one unemployed when seeking pecuniary benefits provided by law for the latter only."

In contrast to appellant's argument that *Neeley* controls herein, respondent argues that the instant case is distinguished and controlled by the case of *Trail v. Ind. Com'n*

*Div. of Employment Sec.,* 540 S.W.2d 179 (Mo.App.1976). In *Trail,* the employee received a maternity leave of absence without assurance of reemployment at the end of her leave. At the expiration of the leave period, the employee notified her employer that she wanted to return to work, but the employer advised her that her job was unavailable until another former employee was rehired. The court, in declaring that the employee was qualified for benefits, reasoned that the employment relationship terminated when the employee attempted to return to work at the end of the leave period. The court concluded that the unemployment resulted, not from the voluntary taking of a leave of absence, but from the action of the employer in not rehiring her. It was held that the employee was entitled to benefits from a certain period of weeks after she had attempted to return to work. The court's reasoning, and that which respondent contends should govern the instant case because of the similarity of facts, concluded:

> "'An employee who takes a genuine "leave of absence," . . . is also "unemployed", during the leave period . . . He is . . . "disqualified" for benefits *during the period* because he "left his . . . work voluntarily without good cause" . . . and his unemployment during the leave is therefore attributable to his own "fault". But where the ongoing job is terminated by the employer during the leave, with the result that it—the job—is not available to the employee at the expiration of the leave as anticipated by the parties, his consequent unemployment at that time has been caused by the employer's action alone. This means that his first-instance reasons for having taken the "leave of absence" are no longer relevant for purposes of determining his eligibility for unemployment compensation benefits, that he is not currently unemployed due to his own "fault," and that he is accordingly not "disqualified for . . . benefits" by reason of having "left his . . . work voluntarily without good cause."'" *Trail, supra,* at 183 quoting from *Lewis v. California Unemployment Insurance Ap-*

*peals Board*, 56 Cal.App.3d 729, 128 Cal. Rptr. 795, 803 (1976).

Respondent, in arguing that *Trail* and not *Neeley* controls, states that there are certain distinctions between the two cases. There are indeed distinctions, which consist of the following facts: (A) In *Neeley*, the claimant sought benefits for weeks *prior* to the expiration of the leave period whereas in *Trail* and the instant case, the claimant and employee sought benefits for certain weeks *after* the leave period; and (B) In *Neeley*, the claimant was rehired prior to the expiration of the leave period and received no termination notice as did the claimant in *Trail* and the employee herein. The issue to be resolved is whether the above distinctions have any controlling effect upon the instant case and just how § 288.050 relates to the instant case.

A review of the court's opinion in *Trail* and obviously respondents' argument herein, fails to take into account the language of § 288.050 and more notably, the omissions of § 288.050. Even though the decision in *Trail* suggests to the contrary, § 288.050 does not state that a disqualification can be removed by any subsequent action by the employer. Pursuant to the language of § 288.050, the only relevant question is whether the employee herein left her work without cause attributable to her work or her employer. If that question is answered affirmatively, then the employee herein stands disqualified. The determination must be derived from the evidence upon the record, which discloses the terms relative to the understanding between the employee and her employer.

The "leave" granted the employee herein was certainly similar to the existing situation in *Trail, supra*, since both agreements held that reemployment was contingent upon the availability of a position at the end of the leave period. See *Trail, supra*, at 183. The Commission in the instant case made a specific finding that "her return to work was contingent upon accounting work being available." That finding by the Commission is supported by competent and substantial evidence upon the record. In the instant case, the Commission made no finding on the issue of whether or not the discussions between the employee and her employer amounted to a guarantee of a position by December 31, 1978. If the evidence supports a finding of a guarantee, then the above question of whether or not the employee left work without cause attributable to her work or employer stands answered and she must be held qualified.

The court in *Trail, supra*, concluded that it was not essential to find a guarantee at the expiration of the leave period. In *Trail*, the court relied heavily upon the *Lewis* decision. Close scrutiny of *Lewis* reveals that the employee was granted a leave of absence for personal reasons with no assurance of reemployment. At the end of the leave period, the employee attempted to return to work and was advised she could not do so because her position had been eliminated. The trial court ruled the employee disqualified, concluding that "[a]n employee who obtains a leave of absence without securing an unconditional guarantee that he may return to his employment at the expiration of the leave of absence voluntarily quits his employment within the meaning of (the California statute)." *Lewis*, 128 Cal.Rptr. at 798.

The California Appeals Court reversed this decision on appeal, holding that the above theory as "inflexibly stated, is invalid because it fails to comprehend the material distinction between suspension of work and termination of employment ..." *Lewis*, 128 Cal.Rptr. at 798. The California Appeals Court, however, after chastising the trial court's theory, stated that the effect of unemployment subsequent to an employee's taking a leave of absence *must be assessed according to the terms of the leave*. The court then examined two factual situations.

The first situation is what can be called *a termination with conditional rehire*. Here, the leave is tantamount to a termination if the employee receives *"no more than a promise of reemployment if there is a job available"* at the end of the leave period. This was held not to be a true leave of absence, "because the 'continuity of the em-

ployment status' at one job, as ordinarily connoted by the term 'leave of absence' . . . [citations omitted] terminates with the job." The court went on to stay that "if he (the employee) took the 'leave' voluntarily and for purely personal reasons, only he is 'disqualified for unemployment compensation benefits' during the leave period because of the crucial fact that he 'left his most recent work voluntarily without good cause . . . [citations omitted] If he is denied reemployment in another job at the end of the period, the disqualification persists because the former job was terminated for the same reason." *Lewis*, 128 Cal.Rptr. at 803.

The second situation is the *true leave of absence*. This occurs when the employer and employee preserve the continuity of the employment relationship by agreeing that "active work at that job—not 'a' job—will be resumed when the leave expires." *Lewis*, 128 Cal.Rptr. at 803.

The California Appeals Court, in further consideration of the second situation, pointed out that the employee remains ineligible for benefits during the leave period since he left work voluntarily without good cause, but when the current job is terminated by the employer during the leave period, (so that *the job* is not available at the end of the leave period) the resulting unemployment is attributable to the action of the employer alone. The employee's *initial* reasons for taking the leave are no longer relevant in determining qualification for benefits following the end of the leave. The employer's action under such circumstances thus renders irrelevant the employee's leaving work voluntarily and without good cause.

In *Lewis*, the California Appeals Court, under the factual setting of that case, found the agreement between the employer and employee contemplated the resumption of work by the employee at the *employee's* old job, not a new job.

For a case whose factual basis is found to be similar to the first factual situation, see *Douglas v. California Unemployment Insurance Appeals Board*, 63 Cal.App.3d 110, 133 Cal.Rptr. 604 (1976).

While not taking a noted exception to the court's ruling in *Trail, supra*, and while noting no expressed finding of such since the court relied upon *Lewis, supra*, and even though it was found the claimant had received no assurance of reemployment, this court must find that the court in *Trail* concluded that the leave agreement contemplated that any rehiring would be at the same job and not just any job. This has to be the result in order for the rationale in *Lewis* to be applicable and relied upon by the court in *Trail, supra*.

This court finds that the factual distinction utilized by the California court in *Lewis, supra*, is a sound approach and can be applied to resolve the instant dispute. While the instant case and *Trail, supra*, appear to be factually indistinguishable, this court is not necessarily bound to the same conclusion reached in *Trail* when the evidence, findings by the Commission and the applicable statute are considered.

In the instant case, disposition of the matter could be made upon either of two bases. In the first instance, the evidence shows that the employee herein was informed by letter that she was being placed upon personal leave and that her return to work was contingent upon "an opening in accounting." The evidence adduced herein discloses that the Commission made a specific finding that her return to work was "contingent upon accounting work being available." This evidence and finding indicates that her work *at that job* was being terminated in return for a promise of reemployment contingent upon the availability of a job in the accounting department at the end of the leave period. Thus, the evidence supports a finding that the employee was disqualified because the reasons for taking the leave are still relevant in determining qualifications as presented in the first factual situation [or (1)] above.

Disposition of this cause under (1), however, leaves unconsidered our applicable statute (§ 288.050); and it is necessary to resolve the issue concerning that statute. As has been pointed out above, our statute does not declare that subsequent action by

an employer removes the disqualification. The statute speaks only in terms of disqualification where the employee has left work voluntarily without good cause attributable to his work or to his employer. It must be noted that the "good cause" is that referenced to the "work" or "the employer", not the reason for the leave of absence. It cannot be said that the employee herein lacked "good cause" to take care of her temporarily ailing husband. Such good cause, however, meritorious, is not "good cause" as contained within the wording of the statute.

This court concludes, rather than make disposition under *Lewis* (1) above, that full consideration of the evidence in determining whether a genuine leave of absence occurred better serves the purpose of construing our applicable statute. The evidence supports only the finding that a guarantee of reemployment does not exist. For a true leave of absence to exist, such guarantee must be found from the evidence, see *Lewis, supra*. In the absence of this required guarantee and hence the absence of a bona fide leave of absence, the facts and circumstances place the employee within the language of § 288.050. Thus, she is declared unqualified for unemployment benefits within the meaning and intent of the statute. Section 288.050 intends to apply to employees who by their own actions have left work voluntarily without good cause attributable to his or her work or to his or her employer. Under the facts and circumstances of the instant case, and within the wording and intent of § 288.050, the employee is found to be and is hereby declared unqualified for unemployment benefits.

The issue presented on this appeal is found in favor of the appellant. The judgment of the circuit court is reversed and this cause is remanded with instructions to the circuit court to enter its order directing the Labor and Industrial Relations Commission to enter an order approving and affirming the ruling and order of the Division of Employment Security, denying benefits to the employee herein.

NUGENT, J., concurs.

DIXON, J., concurs in result in separate concurring opinion.

DIXON, Judge, concurring in result.

I concur in the result of the opinion in this case but wish to express my reasons for that concurrence.

The determinative issue is the reason for the lack of employment. If the employee left "voluntarily," then the employee may not receive benefits.[1] Section 288.050(1) RSMo Supp. 1980.

In this case, there is no claim that the employer induced the employee to leave. In fact, the employer had made some accommodation to the employee's personal problem.

Viewing the situation as it existed when the arrangement was made, the employer agreed to retain the employee *if* work was available in the accounting department when the voluntary period of work suspension ended. Implicit in the "if" is the assumption by the employee of the risk of unemployment at the expiration of the period of leave. That risk was undertaken by the employee voluntarily. The employee simply voluntarily left work with no unconditional right to return to work. To hold that benefits were available would make the employer bear a burden the employer was unwilling to assume. As the majority opinion correctly states, in a true leave of absence situation, the employer agrees to the unconditional future resumption of full employment status and does so voluntarily. In the instant case, it is apparent the employer did not wish to assume that burden.

Paradoxically, the result in this case denying benefits to the employee is consistent with the legislatively stated purpose of the employment security law, § 288.020 RSMo

---

1. The issue of leaving voluntarily without good cause, such as the disability of the employee, is not here involved.

1978, which enunciates the purposes of the Act.

A contingent arrangement between an employer and employee, as the evidence discloses in this case, tends to promote the stability and continuity of employment by deferring the necessity for the employee's voluntary termination of employment. If an employer is not permitted to enter into such contingent arrangements with employees without becoming, in effect, an insurer of the employee's benefits, employers will not undertake such contingent arrangements. If an employer in the circumstances of the instant case were required to provide benefits, the employer would never undertake such an arrangement. The employer would simply refuse the leave and compel the employee to voluntarily quit. It is also apparent that there is nothing in this opinion which prevents the employer and employee from creating a true leave of absence situation in which the employer promises to reemploy, regardless of the availability of a particular job, after termination of the furlough period. What is encouraged here is the possibility of retention of the employee, and the concomitant benefits of seniority to the employee and an experienced, stable work force to the employer.