[Civ. No. 29188. Fourth Dist., Div. Two. Sept. 19, 1983.]

TRAVIS L. STANFORD et al., Plaintiffs and Appellants, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent.

**COUNSEL**

Schwartz, Steinsapir, Dohrmann, Krepack, Sommers & Edelstein, Laurence D. Steinsapir and Michael R. Feinberg for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman and Richard Spector, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**RICKLES, J.**—Travis L. Stanford appeals from the denial of his claim for unemployment insurance benefits. The United Steelworkers of America (Union) appeals from the judgment dismissing it from the mandamus action below.

### PROCEDURAL HISTORY

Stanford applied to the Employment Development Department (EDD) for unemployment benefits after he was laid off in December 1979. The EDD denied the claim on the basis he had left work voluntarily without good cause. Stanford appealed the determination. The administrative law judge held a hearing with testimony and documentary evidence, and likewise denied the claim for benefits. An appeal to the Unemployment Insurance Appeals Board (Board) produced the same result. Stanford and the Union filed a petition for writ of mandate in the superior court to review the Board's decision. The trial court issued judgment affirming the Board's decision (holding the claimant was not entitled to benefits) and dismissing the Union from the action as an improper party. Both Stanford and the Union appeal.

### FACTS

For approximately 10½ years, Stanford was employed by Kaiser Steel (Kaiser) as a fitter. His last day of work at this employment was December 6, 1979. He left work under the following circumstances:

In December 1979, Kaiser announced and put into effect a mandatory reduction in force that would require a certain number of fitters to be laid off. Because of his seniority, Stanford would ordinarily not have been one of those laid off. Pursuant to a collective bargaining agreement between Kaiser and the Union, employees with seniority may volunteer to be laid off in place of less senior employees (provided the junior employees have

more than two years' service).[1] In accordance with this provision of the agreement, Stanford elected to be laid off. He was motivated in this regard because he is a widower with no dependents and desired to prevent the layoff of a younger fitter who had a family to support. If Stanford had not so volunteered, such a younger fitter would have been laid off instead. However, Stanford did volunteer and was laid off.

In June 1979, a similar event occurred. At that time, Stanford also volunteered to substitute for a less senior person. Kaiser's official records indicated Stanford was laid off due to reduction in force. Accordingly, when Stanford filed his claim for unemployment benefits, he was paid benefits based on his similar statement.

With respect to the layoff in December 1979, Kaiser indicated the reason for claimant's unemployment was a voluntary layoff.

In July 1979, Kaiser changed its policy of reporting the substitutionary layoffs as mandatory reductions in force. The Union filed a grievance over the change in policy. The grievance was denied at the local level and was unresolved at any higher level at the time of the evidentiary hearing.

ISSUES PRESENTED

Stanford and the Union raise the following issues on appeal:

1. Was Stanford's layoff voluntary and without good cause within the meaning of Unemployment Insurance Code section 1256?

2. Was the Union properly dismissed from the mandamus action?

3. Is Stanford and/or the Union entitled to attorneys' fees?

---

[1]The pertinent provision of the agreement provides:
"BUMPING
"1. In the event of a layoff in an affected employee's seniority plant, employees with two (2) or more years of continuous service shall be permitted the option to be laid off by classification or exercise their seniority to the extent of two (2) bumps. Before an employee can exercise a voluntary layoff, all employees in his classification with less than two (2) years of continuous service must be on layoff status.
"2. In the event of a layoff affecting those employees with less than two (2) years of continuous service, an employee shall exercise his seniority to the fullest extent possible within his respective seniority plant.
"3. In the event of a layoff in an affected employee's seniority plant affecting those employees with two (2) or more years of continuous service, a more senior employee may elect layoff out of seniority to the extent of displacing a more junior employee."

## DISCUSSION

1. *Was the layoff voluntary and without good cause?*

 We hold the layoff, although in a sense voluntary, was with good cause within the meaning of section 1256.

None of the cases relied on by the Board and Kaiser are precisely applicable. The applicant in *Zorrero* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 434 [138 Cal.Rptr. 410], left work because of a four-hour round trip commute by bus to work. However, he could have repaired his car, purchased another car, or asked for a transfer to a store nearer his home. He did none of these things and the court ruled he did not have good cause to quit his job. In *Evenson* v. *Unemployment Ins. Appeals Bd.* (1976) 62 Cal.App.3d 1005 [133 Cal.Rptr. 488], claimant was discharged because he refused to pay his union dues as required under the bargaining contract.

In *Perales* v. *Department of Human Resources Dev.* (1973) 32 Cal.App.3d 332 [108 Cal.Rptr. 167], the court held quitting work to attend school full time was not "good cause" to leave work. In *Douglas* v. *Unemployment Ins. Appeals Bd.* (1976) 63 Cal.App.3d 110 [133 Cal.Rptr. 604], the claimant left her work to accompany her spouse on a temporary job assignment in another state. Since neither the spouse nor the spouse's employer required the claimant to accompany the spouse on the temporary assignment, the claimant did not have "good cause" to leave her own employment. In each case, however, the initiating impetus for the termination of employment was a matter entirely in the control of the claimant.

In the instant case, we hold the instigating cause for Stanford's termination of employment was the employer's announced mandatory layoff. Stanford's rights under the collective bargaining agreement to elect a substitutionary layoff did not arise until after the employer had already determined a mandatory layoff would be made. Then, and only then, did he exercise the limited right, within the bounds of the bargaining agreement, to elect a substitutionary layoff.

To hold Stanford terminated his employment for personal reasons is to ignore the entire context in which the layoff election arose. While it is true that the collective bargaining agreement does not control the determination of eligibility for benefits, the terms of the bargaining agreement are not completely irrelevant, either. The terms of the bargaining agreement are a part of the factual matrix at the time of separation. (See *Douglas Aircraft Co.* v. *California Unemp. Ins. Appeals Board* (1960) 180 Cal.App.2d 636 [4 Cal.Rptr. 723].) For example, in *Douglas Aircraft* itself, the collective

bargaining agreement required a pregnant employee could not work beyond the fourth month of pregnancy. The employer argued, since the employee was a member of the union that negotiated the contract, and the union agreed to the pregnancy provision, the employee had left work "voluntarily." It is in this sense of equating agreement of the union to a contract provision with a voluntary action by the employee to terminate employment that the court stated the collective bargaining agreement does not control in determining eligibility for benefits. (*Id.*, at p. 644.) The court did take account of the contract pregnancy leave provision and did give effect to it in holding the employee had in fact left her employment *involuntarily* pursuant to the contract provision. Thus the terms of the collective bargaining agreement are relevant parts of the factual matrix surrounding the separation from employment. On the issue of allocating layoffs when a mandatory layoff is declared, there are a number of possible agreements which could have been made. The Union and the employer could agree that the most junior employees must be laid off first. They could agree that the most senior employees would be laid off first. They could agree to let the employer have absolute discretion to choose who would be laid off. They could agree on a formula for random selection. They could also, as they did here, have a basic inverse seniority layoff system modified to allow an individual employee to elect a substitutionary layoff. The Board has no apparent objection to any of the arrangements listed, except the last one. The Board would give effect to every plan, except one that allows the discretion in allocating the layoffs to be shared with the employees. In essence, the Board does not object to any arrangement where the choice of which employees will be laid off is involuntary as to the employee. The Board has thus shifted the issue to the voluntariness of leaving work, and away from the question of good cause. Because there is an element of voluntariness here, the Board apparently believes there can be no good cause. The Board ignores the fact that, under all of the plans described above, the instigating cause for the termination is the employer's mandatory layoff. The collective bargaining agreement provides some mechanism by which the employer's mandated layoffs may be allocated. The employee's choice under the plan at issue here arises only after the employer has mandated a certain number of employees will be laid off.

The argument Stanford should not be allowed to make such an election because it may cost the state more money is a red herring. The employer and the Union could have agreed that the most senior people would be laid off first, or could have let the employer select which employees would be laid off, or could have had the employees draw lots. In each case, although the selection could cost the state more than a juniors-first layoff plan, or perhaps even more than the plan at issue here, the Board would nevertheless have given effect to the plan. The Board thus has no particular interest in

which employees are actually laid off. As the Board pointed out, each claimant's situation is different, and the claimant may or may not be eligible for unemployment benefits. This is so even if only the most junior employees are selected for layoff.

Given the broad policy to promote industrial stabilization through the medium of collective bargaining (*Steelworkers* v. *Warrior & Gulf Co.* (1960) 363 U.S. 574, 578-580 [4 L.Ed.2d 1409, 1414-1416, 80 S.Ct. 1347]; *Posner* v. *Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 183 [14 Cal.Rptr. 297, 363 P.2d 313]), we cannot support the Board's position, which essentially allows the Board to pass judgment on provisions of the collective bargaining agreement. Rather, the Board must give effect to the provisions of the collective bargaining agreement; so long as there is a legitimate layoff, it is not the Board's concern how the Union and the employer agree the layoffs are to be allocated.

We conclude, therefore, Stanford had good cause to leave his employment within the meaning of Unemployment Insurance Code section 1256. If otherwise qualified, he is entitled to receive unemployment insurance compensation benefits. The judgment denying the award of benefits is reversed.

### 2. *Dismissal of the Union as a party*

█ The Union joined in filing the petition for writ of mandate in the trial court. (It was not a party in the administrative proceedings.) The trial court sustained demurrers of the Board and Kaiser on the ground the Union did not have standing as a party to the action.

We hold this case to be governed by *International Union of United Auto. etc. Workers* v. *Department of Human Resources Dev.* (1976) 58 Cal.App.3d 924 [130 Cal.Rptr. 368]. The court in that case held a union has standing to be a party petitioner in a case involving the members' employment, including denial of unemployment benefits. (*Id.,* at p. 935.) The court held, however, the union had failed to state a cause of action. "In this regard, *American Federation of Teachers* v. *San Lorenzo etc. Sch. Dist.* . . . 276 Cal.App.2d 132 [80 Cal.Rptr. 758], cited by respondents, is pertinent. There, the court stated (at pp. 136-137): 'The actual issue here is not one relating to the right of a labor union to represent its members. . . . The issue is one of pleading, namely, [has this petitioner] stated a cause of action? . . . There is no allegation in the petition that any right of the union . . . has been invaded, and [the petitioner does not ask] that any relief be granted to [it].' While petitioner . . . could bring this action on behalf of its individual members when those members are allegedly injured by a wrongful denial of benefits, the immediate action names the injured mem-

bers themselves as petitioners. Hence, the union is an unnecessary party which here fails to state a cause of action." (*International Union of United Auto. etc. Workers* v. *Department of Human Resources Dev., supra,* 58 Cal.App.3d 924, 935.) The same may be said of the instant case. The Union has not alleged any way in which its rights have been injured and it has not asked for any relief itself. The aggrieved member is suing in his own name. On the pleadings as presently framed by the Union, it has failed to state a cause of action and it is not a necessary party. The demurrers were properly sustained.

### 3. *Attorneys' fees*

■ Stanford and the Union ask for attorneys' fees pursuant to Government Code section 800. Government Code section 800 provides for an award of attorneys' fees "where it is shown that the award, finding, or other determination of such [administrative] proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in his official capacity . . . ."

The appellants here have made no demonstration any public entity or official acted arbitrarily or capriciously. There was, in fact, a bona fide dispute concerning the application of section 1256 of the Unemployment Insurance Code. The request for attorneys' fees is therefore denied.

### DISPOSITION

We hold Stanford left his work with good cause pursuant to the employer's mandatory layoff. The judgment denying the petition for writ of mandate is therefore reversed. The trial court is directed to issue an appropriate writ of mandate. In all other respects, the judgment below is affirmed. The request for attorneys' fees is denied.

Morris, P. J., and McDaniel, J., concurred.