609 P.2d 612

**PHELPS DODGE CORPORATION, a New York Corporation, Plaintiff/Appellee,**

v.

**STATE of Arizona, DEPARTMENT OF ECONOMIC SECURITY; John J. Zenonian, an Individual, Defendants/Appellants.**

**No. 2 CA–CIV 3293.**

Court of Appeals of Arizona, Division 2.

April 4, 1980.

which reversed a final decision of DES that John J. Zenonian was eligible for unemployment compensation benefits and that the experience rating account of Phelps Dodge, his last employer, should be charged. In our original opinion, we reversed the judgment with directions to affirm the DES decision. On motion for rehearing, however, we have concluded that our original decision was erroneous and we affirm. This opinion is therefore substituted for the original one.

Mr. Zenonian filed a claim for unemployment compensation benefits effective August 21, 1977, stating he had last worked on August 19 for Phelps Dodge in Ajo, Arizona, and was laid off. Phelps Dodge filed a timely protest to payment of benefits and chargeability thereof. On November 9, 1977, a deputy determined that Zenonian left work voluntarily without good cause in connection with the work, assessed the statutory disqualification and non-charged the employer's account. The claimant appealed. A hearing was held in Grants Pass, Oregon, at which the claimant testified. An appeal tribunal hearing was held in Tucson at which an employer-witness testified. The appeal tribunal set aside the deputy's determination in toto and remanded the issue of the claimant's availability for work to the local office for adjudication.

Phelps Dodge sought judicial review in superior court of the agency decision, cross-motions for summary judgment were filed, and the superior court found that Phelps Dodge was entitled to judgment in its favor as a matter of law. The superior court, in reversing, concluded that DES erroneously determined that Zenonian's separation from employment with Phelps Dodge was not caused by his voluntary retirement and that he had voluntarily left his employment without good cause, thereby being disqualified from receiving unemployment compensation benefits in accordance with A.R.S. Sec. 23–775.

The appeal tribunal made the following findings of fact: The claimant, age 51, was employed by Phelps Dodge from March 10, 1947, until his layoff on August 19, 1977.

Evans, Kitchel & Jenckes, P. C. by Nathan R. Niemuth, Phoenix, for plaintiff/appellee.

Robert K. Corbin, Atty. Gen. by Alex G. Duncan, Tucson, for defendants/appellants.

## SUBSTITUTED OPINION ON REHEARING

HATHAWAY, Judge.

The Department of Economic Security seeks review of a superior court judgment

His employer ceased all operations on August 21, and the shutdown was expected to last through the month of September. The claimant filed for unemployment insurance benefits on August 24 and on August 29, signed an application for a special early retirement program offered by the employer, a program available only to those workers on layoff status. The effective date of this retirement was August 21, 1977. Sixty-four of the 130 eligible workers chose to accept the retirement and accompanying benefits. The employer resumed operations on October 2, 1977, and recalled all employees who were laid off except those who had filed an application for pension. Employees accepting the pension might reapply for employment and, if an opening were available, be reemployed.

The only issue before the tribunal was whether Mr. Zenonian's separation from employment was a layoff or a voluntary leaving. Benefit Policy Rule R6–3–50135(A) provides in part:

"1. A worker's separation from employment is either a quit or a discharge.
2. The claimant quits when he acts to end the employment and intends this result.
3. The separation is a discharge when it results from the employer's intent and action. This includes layoff for lack of work, and requests by the employer for worker's resignation."

Rule R6–3–50440 provides, in pertinent part:

"B. Temporary shutdowns
1. The employer-employee relationship continues when a worker is temporarily laid off because his employer suspends all or a part of his operation *for a definite period of time* provided:

a. The *shutdown is of short duration;* generally a four-week period will be considered a maximum; and

b. The worker is given definite assurance of reemployment at his regular job or other suitable work when the employer resumes his operations; and

c. The employee has worked for the employer long enough to have established a firm attachment to the employment. The general pattern for the industry and occupation involved will serve as a guide to establish such attachment." (Emphasis added)

Rule R6–3–50345(A) states:

"A worker who chooses to retire leaves voluntarily without good cause in connection with his employment  .    . .."

The appeal tribunal concluded that the claimant's separation from employment was a discharge. It rejected the employer's position that only a temporary shutdown had occurred and therefore the employer-employee relationship was terminated when the claimant applied for his pension.

The letter sent by Phelps Dodge to all of its work force, including claimant, stated:

"Because of adverse economic conditions in the copper industry and the resulting deterioration in the price of copper, the Company has determined that a suspension of its mining, concentrating and smelting facilities at Ajo is necessary. It is anticipated at this time that the suspension will continue through the month of September."

The appeal tribunal concluded that the claimant's separation from employment was a layoff on August 21, 1977, because it was expected to last at least five weeks and the shutdown was for an indefinite period. It stated:

"A temporary separation or a cessation of work does not sever the employment relationship if there is a definite agreement between the employee and employer the worker will resume his employment at a definite time or on the occurrence of a definitely foreseeable event. The temporary shutdown must be of short duration, generally, no more than four weeks."

Although findings of fact of the administrative agency, if supported by competent evidence, are binding upon the superior court, it is not bound by the agency's legal conclusions. *Employment Security Commission v. Amalgamated Meat Cutters & Butcher Workmen of North America,* 22 Ariz.App. 54, 523 P.2d 105 (1974). Whether

the employee-employer relationship between Phelps Dodge and Zenonian was terminated by the temporary shutdown was a legal question as to which the superior court could make its own independent determination.

Applying the criteria set forth in Rule 6–3–50440(B) for determining whether the employment relationship was terminated by the layoff, we believe it was not. It is not subject to debate that Mr. Zenonian had worked for Phelps Dodge long enough to have established a firm attachment to the employment. Although the letter advising of the shutdown did not expressly assure reemployment upon resumption of operations, the collective bargaining agreement between Phelps Dodge and the union gave Mr. Zenonian a contractual right to be recalled. Also, the letter indicated the continuation of various employee benefits, at company expense, during the shutdown period. While the anticipated shutdown was for a period in excess of the four-week period *generally* considered a maximum, such a factor alone should not control in the face of the other indicia of non-severance of the employment relationship. The word "generally" as used in the rule means "for the most part" or "usually." *Donovan v. Delaware Water and Air Resources Commission*, Del.Supr., 358 A.2d 717 (1976). The use of the word "generally" imports the existence of exceptions. We find no error in the trial court's conclusion that the employment relationship was terminated not by Phelps Dodge but by Mr. Zenonian's own act in choosing to accept retirement.

Affirmed.

HOWARD and RICHMOND, JJ., concur.