741 P.2d 703

**AT & T INFORMATION SYSTEMS, INC., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an agency, and Fern V. Neilssen; Tricia Herschell; Charlotte M. Jacobs; Mark C. Romero; Sandra D. Curran; Sandra R. Fulmer; Teresa A. Goebel; and Terry K. Kosanke, Appellees.**

**No. 1 CA-UB 495.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 13, 1987.

Streich, Lang, Weeks & Cardon, P.A. by Lawrence Allen Katz, David A. Selden, Phoenix, for appellant.

Robert K. Corbin, Atty. Gen. by Frank Sagarino, Asst. Atty. Gen., Phoenix, for appellee Arizona Dept. of Economic Sec.

## OPINION

NOREEN L. SHARP, Judge Pro Tem.

This appeal is from a decision of the Appeals Board of the Arizona Department of Economic Security (DES), which held that appellees, employees of AT & T, left their jobs for nondisqualifying reasons and were therefore eligible for unemployment insurance benefits. We affirm.

AT & T initiated a nationwide plan to eliminate 24,000 jobs in information systems with the purpose of reducing costs and improving profit programs. In connection with this goal, on July 24, 1985, AT & T declared that it intended to reduce the work force in its Tucson business office and would terminate 29 of the 94 employees in that office.

Pursuant to the applicable collective bargaining agreement between AT & T and its employees dated August 7, 1983, AT & T offered all employees the opportunity to participate in its "Voluntary Income Protection Program" (VIPP). The collective bargaining agreement described VIPP as a plan under which "employees ... may elect, in the order of seniority, and to the

extent necessary to relieve the surplus, to leave the service of the Company and receive Voluntary Income Protection benefits ... subject to [certain] conditions." The benefits included one week's pay for every year of service for the first 10 years of employment, two weeks' pay for every year of service in excess of 10 years up to 20 years, three weeks' pay for every year of service in excess of 20 years up to 30 years, and limited reimbursement for relocation, job training, or job placement.

At the time the reduction was announced, AT & T published a list, in order of seniority, of the 94 employees working in its Tucson office, and indicated the 29 employees with the least amount of seniority by listing them below a fixed black line on the list. These employees who were "at risk" of losing their jobs because of the work force reduction were given the choice of voluntary termination under VIPP, involuntary termination, or transfer. The remaining employees were "not at risk," but had the choice under the collective bargaining agreement of accepting VIPP, rejecting VIPP and continuing to work, or transferring. As employees who were "not at risk" of involuntary termination elected to receive VIPP benefits and voluntarily resign, the number of employees "at risk" of involuntary termination was correspondingly reduced.

Each of the individual appellees except one was "not at risk" of involuntary termination. That employee eventually became "not at risk" when employees with greater seniority who were "not at risk" volunteered for layoff. All of the appellees elected VIPP or termination pay after the announcement of the surplus by AT & T. Thereafter, appellees filed for unemployment insurance benefits.

DES through its Appeal Tribunal determined that AT & T initiated the layoff and therefore all appellees except one were eligible for unemployment benefits.* The Appeals Board of DES affirmed the Appeal Tribunal's decision but reversed the denial

of benefits to the one excepted employee. We agree with the Appeals Board.

Unemployment insurance was adopted by the legislature to provide economic assistance to individuals who are temporarily unemployed. The policy underlying unemployment insurance is to achieve social stability by reducing the economic burden placed on those unemployed through no fault of their own. A.R.S. § 23–601. *See also Ferguson v. Arizona Dept. of Econ. Sec.*, 122 Ariz. 290, 594 P.2d 544 (App. 1979). The Employment Security Act is remedial and should be liberally construed. *Southwest Lumber Mills v. Employment Sec. Comm'n*, 66 Ariz. 1, 5, 182 P.2d 83, 85 (1947).

The courts have long recognized the power of administrative agencies to adopt rules and regulations which deal with matters within the province of the agencies, so long as the rules are reasonably related to the purposes of the statutory provisions, and not inconsistent with or contrary to the statute. *Ferguson.* DES, therefore, is empowered to promulgate regulations to further the goals set out by the legislature.

AT & T first argues that the Appeals Board applied A.C.R.R. § R6–3–50135(H) incorrectly. AT & T cites the language of A.R.S. § 23–601, which refers to individuals unemployed "through no fault of their own" and contends that appellees volunteered for layoff, received compensation for doing so, and therefore became unemployed as a result of their own action. We do not agree.

A.C.R.R. § R6–3–50135(H) states:

H. Volunteering for layoff.

When an individual volunteers or submits his name to be considered for a layoff or furlough due to a reduction in the work force, *a decision must be made as to who initiated the action.*

1. *When an employer determines that a layoff is to occur and then inquires as to whether there are individuals who will volunteer for the*

---

* The excepted appellee ended her employment on August 23, 1985, when the terminations were originally scheduled to take effect. However, AT & T had extended the termination date to September 6, 1985, and the remaining appellees worked until this date.

layoff, the separation is a discharge for nondisqualifying reasons.

2. *When an employee requests or volunteers for layoff status prior to any specific announcement by the employer* and the employer acts upon the request, the separation is a voluntary leaving which is disqualifying unless it can be established that the leaving was for compelling personal reasons.

(Emphasis added.)

AT & T argues that A.C.R.R. § R6–3–50135(H)(2) should have been applied because appellees were "not at risk" of termination and that there was no announcement of a layoff as to appellees. AT & T contends that the appellees received compensation under VIPP and were therefore not eligible for unemployment benefits. However, the dispositive issue is not whether the appellees received monetary incentives for termination or were "at risk," but rather *who initiated the separation from employment.* The critical question is whether the separation is a voluntary quit on the part of the employee or a discharge by the employer, which is determined pursuant to A.C.R.R. § R6–3–50135(H) by identifying who initiated the layoff.

This determination must distinguish voluntariness from fault. In both situations described in A.C.R.R. § R6–3-50135(H)(1) and (2), the employee will have volunteered for a layoff. However, as the introductory statement indicates, "[A] decision must be made as to who initiated the action." DES has determined that, once an employer announces a layoff and asks for volunteers, any employee who elects layoff is unemployed through no fault of the employee, even though it was a voluntary decision of the employee.

The regulation is not inconsistent with the statutory scheme and it furthers the policies of the legislature. The policy statement in A.R.S. § 23–601 encourages employers to provide more stable employment. When an employer announces a layoff, inevitably some employees will lose their jobs. The regulation finds the employer at fault whenever the employer initiates a layoff, regardless of whether an individual employee subsequently volunteers for the layoff that the employer has determined will occur.

AT & T also argues that the outcome of this case should be determined by the holding in *Phelps Dodge Corp. v. State, Dept. of Econ. Sec.,* 125 Ariz. 342, 609 P.2d 612 (App.1980). To begin with, *Phelps Dodge* was decided before the adoption of A.C.R.R. § R6–3–50135(H), which took effect July 27, 1983, and therefore the case is not controlling or applicable. As noted in *Anderson v. Arizona Dept. of Econ. Sec.,* 151 Ariz. 350, 727 P.2d 845 (App.1986), determinations in unemployment security law are made under current regulations rather than by case law decided before the pertinent regulations were enacted.

Furthermore, *Phelps Dodge* is distinguishable from the facts in the present case. In *Phelps Dodge,* the employer announced a *temporary layoff* and the employee volunteered for early retirement. The employee would have been eligible for benefits from the employer during the temporary layoff and would eventually be called back to work. This court held that the employee was ineligible for unemployment compensation because there was a continuation of the employment relationship that was severed only when the employee initiated separation from employment by applying for early retirement. In the present case, however, the *layoff was permanent,* and appellees forfeited all recall rights by volunteering for layoff.

AT & T argues that A.C.R.R. § R6–3–50135(H) is inconsistent with A.R.S. § 23–601 because it creates a disincentive for employers to provide a privately funded unemployment security system such as VIPP, and results in a windfall to appellees. This argument is without merit. VIPP and termination pay were contractual rights obtained through bargaining and negotiations between AT & T and the bargaining agent for its employees. Because these rights are contained in the collective bargaining agreement, AT & T has no option to refuse payment to qualified employ-

ees, notwithstanding those employees' independent statutory rights.

With regard to the effect of the terms of a collective bargaining agreement on unemployment insurance benefits, we are persuaded by the reasoning of the court in *Stanford v. California Unemployment Ins. Appeals Bd.*, 147 Cal.App.3d 98, 195 Cal.Rptr. 1 (1983). In that case a senior employee volunteered to be laid off in place of a junior employee after the employer's announcement of a mandatory reduction in force, and pursuant to the senior employee's rights under a collective bargaining agreement. We find *Stanford* instructive even though the employee in that case received no monetary compensation when he volunteered for layoff. The distinction made by the *Stanford* court was that once the employer initiated the layoff, the method for allocating the layoff under the collective bargaining agreement did not affect the employee's rights to unemployment insurance benefits. The court recognized that:

> The instigating cause for [employee's] termination of employment was the employer's announced mandatory layoff. [Employee's] rights under the collective bargaining agreement to elect a substitutionary layoff did not arise until after the employer had already determined a mandatory layoff would be made. Then, and only then, did he exercise the limited right, within the bounds of the bargaining agreement, to elect a substitutionary layoff.
>
> . . . .
>
> The collective bargaining agreement provides some mechanism by which the employer's mandated layoffs may be allocated. The employee's choice under the plan at issue here arises only after

the employer has mandated a certain number of employees will be laid off. *Stanford,* 147 Cal.App.3d at 102, 103, 195 Cal.Rptr. at 3, 4. The court concluded, therefore, that the employee had good cause to leave his employment and was entitled to receive unemployment insurance benefits.

The purpose of unemployment compensation is to alleviate short-term loss of income. This does not mean, however, that AT & T's independent obligations under the collective bargaining agreement relieve it of responsibility under the unemployment insurance laws. AT & T is contractualy bound to offer VIPP or termination pay on the basis of seniority under the collective bargaining agreement. Through the bargaining process, appellees are entitled to these benefits as part of their overall compensation package. Programs such as VIPP also benefit AT & T, as higher paid senior employees are taken off the payroll. VIPP is a bargained-for benefit to which appellees are independently entitled, despite their statutory rights to unemployment compensation.

For the foregoing reasons, we affirm the decision of the Appeals Board.

CORCORAN, P.J., and EUBANK, J., concur.

NOTE: NOREEN L. SHARP was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. Art. VI, § 3 and A.R.S. §§ 12–145 to –147.