829 P.2d 318

**Julia ROSS, Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency, and Fry's Food Stores of Arizona, Appellees.**

No. 1 CA–UB 90–012.

Court of Appeals of Arizona,
Division 1, Department A.

June 6, 1991.

Reconsideration Denied Aug. 15, 1991.

Review Denied May 5, 1992.

Southern Arizona Legal Aid, Inc. by Anne Kreider, Tucson, for appellant.

Grant Woods, Atty. Gen. by Rick E. Olson, Asst. Atty. Gen., Phoenix, for appellees.

OPINION

LANKFORD, Judge.

This is an appeal from an Arizona Department of Economic Security (DES) decision denying a claim for unemployment benefits. The DES determined that because appellant was discharged for work-related misconduct, she was disqualified for benefits pursuant to A.R.S. § 23–775. This decision rested on findings that appellant knowingly falsified her time card and that this constituted work-related misconduct which reasonably tended to jeopardize the interests of appellant's employer or subject it to a penalty.

The central issue presented on appeal is whether the agency's findings are supported by evidence. We conclude that the employer sufficiently established that its interests were actually or potentially adversely affected by a knowingly false entry on her time card. Accordingly, we affirm the administrative decision.

I.

The basic facts are uncontroverted. Appellant was employed as a cashier for Fry's

Food Stores (Fry's). On April 22, 1989, Fry's discharged her for falsifying her time card.

Appellant applied for unemployment benefits and the deputy denied her application. The deputy's notice of denial of benefits disqualified appellant from receiving benefits because she had been discharged for knowingly giving false information which was potentially damaging to the employer's interests. Appellant timely appealed, and both the Appeal Tribunal and the Appeals Board affirmed. We granted appellant's application for appeal to this court.

At the time of her discharge, appellant had been employed by Fry's for approximately fourteen months, three and one half months as a pharmacy technician and the remaining time as a cashier. On April 20, 1989, appellant was scheduled to start work at 5:00 p.m. Appellant was an hourly employee and was required to use the time punch machine to record her hours of work on her time card.

At the hearing before the Appeal Tribunal, appellant admitted that she arrived to work late, somewhere between 5:03 and 5:05 p.m. Appellant also admitted that at the end of her shift, she wrote in her starting time as 5:00 p.m. Appellant admitted to having previously been reprimanded for tardiness.

Appellant testified that she received, signed for, and read a procedure manual when she began her employment with Fry's. The manual provided that any employee falsifying a time card would be subject to immediate discharge. In addition, time card procedures posted above the time clock instructed employees that the exact time of arrival must be entered on the time card, and expressly prohibited "rounding off" to the nearest quarter hour.

Mr. White, Fry's assistant store manager, testified that he placed appellant on suspension on April 22, 1989. At that time, he told her the reason that she was being suspended was for a time card violation. On April 26, 1989, White terminated appellant's employment. He told her she was being terminated for a time card violation and not for being tardy or for failing to have her time card initialed by a manager. White admitted that appellant's pay was unaffected by her late arrival.

Mr. Lundy, Fry's store manager, testified that the cashier appellant was to have replaced at 5:00 p.m. was paid for fifteen minutes of overtime as a result of appellant's tardiness.

## II.

The appellant argues that Fry's failed to carry its burden of proving that her falsification of her time card adversely affected its interests, and thus that the agency's findings are unsupported by the evidence. A claimant generally has the burden of proving that she is eligible for unemployment benefits. *Employment Sec. Comm'n v. Doughty*, 13 Ariz.App. 494, 478 P.2d 109 (1970). However, when an employee is discharged for work-connected misconduct, the employer has the burden of proving that the claimant was discharged for reasons that should disqualify her for unemployment benefits. *Arizona Dep't of Economic Sec. v. Magma Copper Co.*, 125 Ariz. 389, 609 P.2d 1089 (App.1980); *see also* A.A.C. R6–3–51190(B)(2)(b).

The agency's finding that the employer's interest was jeopardized cannot be lightly set aside by this court. This court has set forth the standard of review as follows:

On appeal, this court views the evidence in a light most favorable to upholding the decision of the appeals board and will affirm that decision if it is supported by any reasonable interpretation of the record. This court does not sit as a trier of fact in the review of appeals board decisions in unemployment benefit proceedings. The board's legal conclusions, however, are not binding on this court, and we are free to draw our own legal conclusions in determining if the board erred in its interpretation of the law.

*Prebula v. Arizona Dep't of Economic Sec.*, 138 Ariz. 26, 30, 672 P.2d 978, 982 (App.1983) (citations omitted).

On another occasion, we emphasized that "this court ... will not substitute its view

of the facts for that found by the administrative agency...." *Gardiner v. Arizona Dep't of Economic Sec.*, 127 Ariz. 603, 605–06, 623 P.2d 33, 35–36 (App.1981).

Conduct which disqualifies an employee from unemployment benefits is defined by statute. Arizona Revised Statutes § 23–619.01 provides in relevant part:

B. *'Wilful or negligent misconduct connected with the employment'* includes, but under no circumstances is limited to, the following:

....

5. Dishonesty, material falsification of employment applications or of other written documents relating to obtaining or retaining employment, *falsification of time records* or work records, theft or conversion of property of the employer, or untruthfulness related to the job which could substantially injure or jeopardize the employer's interest.

(emphasis added).

Pursuant to its rule-making authority[1], DES adopted A.A.C. R6–3–51140 regarding records falsification. The rule provides:

A. General (Misconduct 140.)

1. 'Dishonesty' includes untruthfulness, fraudulent actions, theft, record falsification, misrepresentation of facts, misappropriation of funds or property, etc.

....

3. When adjudicating the discharge of a claimant for misrepresentation or falsification of records the adjudicator should consider the reason(s) for and the result(s) of misrepresentation or falsification in determining misconduct. *See ...* R6–3–51140.C.

....

C. Falsification of records. (Misconduct 140.25) When considering the separation of a claimant discharged for falsification of records, which includes employment applications or other written documents relating to obtaining or retaining employment, the adjudicator must first determine if the statement was actually false. This is a question of fact determined from the best available evidence. *If the falsity is established further consideration must be given to the following questions, both of which must be answered in the affirmative to establish misconduct.*

1. *Was the false statement knowingly made?*

2. *Could the false statement reasonably tend to jeopardize the employer's interest, or subject him to penalty?*

(emphasis added).

The pivotal issue in this case is whether the claimant's conceded misconduct tended to jeopardize the employer's interests. The Appeal Tribunal made findings on this issue. The tribunal found:

Considering the claimant had been reprimanded three days prior for her tardiness, an accurate record of her arrival time would have a bearing on any possible future discipline for tardiness. It was not unreasonable for the employer to demand its employees accurately report their time for such purposes, as well as for wage and hour purposes. Thus, the claimant's actions in reporting a false start time on her April 20 time card could have an adverse effect on her employer. The claimant's reporting 5:00 PM on her April 20 time card was a false statement that she knowingly made and was a false statement which reasonably tended to jeopardize the employer's interests or subject it to penalty.

These findings by the Appeal Tribunal were expressly adopted and reiterated by the Appeals Board following its independent review of the evidence. *See generally*

---

1. Only those regulations "which deal with matters within the province of the agencies, [and] ... are reasonably related to the purposes of the statutory provisions, and [are] not inconsistent with or contrary to the statute" are within agencies' power to promulgate. *AT & T Information Systems, Inc. v. Arizona Dep't of Economic Sec.*, 154 Ariz. 236, 237, 741 P.2d 703, 704 (App.1987). To the extent that the regulation involved here burdens the employer with proof requirements beyond those prescribed by the Legislature, thereby expanding the employer's statutory obligations, it is conceivably inconsistent with the statute. However, it is unnecessary to reach that question because, as discussed below, the employer satisfied the requirements of the regulation.

*Prebula v. Arizona Dep't of Economic Sec., supra.* (Appeals Board is not bound by tribunal's findings and may make its own determinations of fact).

The evidence supports the agency's resolution of the issue. Appellant knowingly entered the incorrect arrival time on her time card. Appellant concedes that she incorrectly recorded her arrival time on her time card. However, she argues that the employer failed to establish, as required by the rule, that this falsification reasonably tended to jeopardize its interests or subject it to penalty. The agency found that the evidence satisfied this regulatory requirement. We uphold the agency's findings.

The regulation, A.A.C. R6–3–51140, does *not* require that the employee's false statement cause specific harm to the employer. Instead, the regulation demands only that the statement "reasonably *tend* to *jeopardize* the employer's *interest*, or subject him to penalty...." (emphasis added).

■ The agency found that the employer has a legitimate interest in maintaining accurate employee time records. An employee's falsification of time records has an obvious tendency to jeopardize that interest.

Moreover, not only does an employer have an interest in maintaining accurate records for wage and hour purposes, it is obligated by federal labor law to do so. *See* 29 U.S.C. § 211(c); 29 C.F.R. Part 516. The administrative finding that employers must maintain accurate records for wage and hour purposes is therefore indisputably correct.

Employers who are responsible for compliance with federal labor law may require their employees to keep accurate records. *Cf. Wirtz v. Mississippi Publishing Corp.,* 364 F.2d 603 (5th Cir.1966) (employee's neglect or default does not relieve employer of obligation to make and keep accurate records). As a practical matter, employers cannot discharge their legal obligation without their employees' cooperation. The attempt of responsible employers to comply with the law should not be hindered by penalizing the employer's insistence that its employees participate in the effort to comply.

The agency's findings clearly satisfy the demands of the agency's own regulation. The employer has an interest in accurate recordkeeping, which an employee's falsification of time records tends to jeopardize.

The agency made another specific finding which supports its decision. It found that the employer had a legitimate interest in requiring accurate time records to combat employee tardiness.

An employer is entitled to require that its employees report to work on time. An employer is also entitled to maintain whatever records it deems necessary to record its employees' performance in this regard. An employer may also require that its employees assist or cooperate in the employer's recordkeeping process.

The employee's falsification of her time card patently tended to jeopardize this interest. The standard created by the regulation is not whether the employer suffered a specific, concrete harm as a result of the particular misstatement involved. In other words, "prejudice" is not the regulatory test. Instead, the regulation requires only that the employer's *interest tends* to be *jeopardized.* "Tend" means to exhibit an inclination or tendency. Webster's Ninth New Collegiate Dictionary 1214 (1988). "Jeopardize" means to expose to danger. *Id.* at 648. The plain meaning of the agency's words reveals that the false statement need not actually or even probably *cause* the employer to suffer any particular, concrete harm—such as being disadvantaged in proving this individual's tardiness. Rather, it is enough that the misconduct *threaten* the employer's interest generally in combatting and disciplining tardiness by maintaining accurate time records, and requiring employees to participate in that effort.

The legislative system of unemployment compensation was never intended to provide universal compensation for all of the unemployed. Rather, "[t]he policy underlying unemployment insurance is to achieve social stability by reducing the economic burden placed on those unemployed

*through no fault of their own."* AT & T, 154 Ariz. at 237, 741 P.2d at 704 (emphasis added). Indeed, the Legislature expressly so declared. A.R.S. § 23–601.

It is not for us to decide whether we think that a particular person should receive benefits. That determination is for the agency to whom the Legislature has delegated its power. The role assigned to us by the Legislature is limited to ensuring that the agency follows the statute and does not abuse the power delegated to it.

For these reasons, we affirm the agency's decision.

CONTRERAS and TAYLOR, JJ., concur.