844 P.2d 1171

**William W. MURRAY, Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency, and Digital Equipment Corporation, Appellees.**

**No. 1 CA–UB 91–092.**

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 10, 1992.

Redesignated as Opinion and Publication Ordered Jan. 12, 1993.

William W. Murray, in pro. per.

Grant Woods, Atty. Gen. by Bonnie E. Elber, Asst. Atty. Gen., Phoenix, for appellee Arizona Dept. of Economic Sec.

Twitty, Sievwright & Mills by Janet L. Feltz, Phoenix, for appellee Digital Equipment Corp.

OPINION

EHRLICH, Presiding Judge.

William W. Murray appeals from a determination by the Appeals Board of the Arizona Department of Economic Security ("DES") that he is disqualified to receive unemployment insurance benefits. For the following reasons, we affirm the decision.

FACTS AND PROCEDURAL HISTORY

Murray was employed for over 13 years by Digital Equipment Corporation as an electronics engineering technician at its Phoenix plant. Digital decided to reduce its work force nationwide. To encourage employees to leave voluntarily, it presented a Transition Financial Support Option Program ("program") to all 600 employees in the Phoenix plant with a goal that 235 employees would accept the proposition. The program offered employees a lump-sum settlement in an amount based upon an employee's years of employment and current weekly pay, continuation of some benefits such as medical, dental and life insurance for specific periods of time, and

---

* The Honorable Michael J. O'Melia, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to article 6, section 3 of the Arizona Constitution.

out-placement service for six months. Employees were informed that while there would be no layoff or plant closure, there would be reclassification and reorganization of work which could include restricted opportunities for future pay increases, reductions in pay and elimination of positions.

More than 245 employees, including Murray, accepted the program. Murray then filed a claim for unemployment insurance benefits.

A DES deputy determined that pursuant to Ariz.Rev.Stat.Ann. section ("A.R.S. §") 23–775(1) and Ariz.Admin.Code ("A.A.C.") R6–3–50135(H), Murray was disqualified for benefits because he had left Digital voluntarily without good cause. Murray sought reconsideration of the determination, which was denied, and the matter was forwarded to the Office of Appeals. Following a hearing, the Appeal Tribunal set aside the determination, finding that Digital had initiated the separation by its motivation to reduce its work force and failed to provide stable employment. Digital then petitioned for review. The Appeals Board set aside the tribunal's decision and concluded that Murray's separation from Digital was a voluntary quit. This decision was affirmed upon review. A timely application for appeal to this court followed and was granted.

## DISCUSSION

Murray submits on appeal that he accepted the program because of a work slowdown and an unpleasant working environment. The state responds that he is not eligible for unemployment insurance benefits because he voluntarily accepted the program without fear of losing his job and failed to establish that compelling personal reasons forced his resignation. The issue on appeal is whether Murray's separation from Digital qualifies as a quit or discharge. *See* A.A.C. R6–3–50135(A)(1).

We accept the Appeals Board's findings of fact if they are supported by any reasonable interpretation of the record. *E.g., Avila v. DES,* 160 Ariz. 246, 248, 772 P.2d 600, 602 (App.1989); *Prebula v. DES,* 138 Ariz. 26, 30, 672 P.2d 978, 982 (App.1983).

However, we decide whether the board properly interpreted the law. *E.g., Munguia v. DES,* 159 Ariz. 157, 159, 765 P.2d 559, 561 (App.1988), citing *Prebula,* 138 Ariz. at 30, 672 P.2d at 982.

The Appeals Board found that Murray elected to leave Digital because he had a poor working relationship with his supervisor and had been dissatisfied with working conditions in his group for up to three years prior to his separation. The board additionally found that Murray did not seek professional assistance for the mental stress allegedly caused by employment and that continuing work was available after his termination date. It considered Murray's separation to be a voluntary quit. It then addressed whether the reason for his resignation disqualified him for unemployment insurance benefits, ultimately concluding that Murray had left without good cause because he failed to establish either that working conditions were so intolerable as to constitute good cause for leaving employment as defined in A.A.C. R6–3–50515 or a compelling personal reason for volunteering for layoff as required by A.A.C. R6–3–50135(H)(2). He therefore was ineligible for benefits.

The board's factual findings are supported by the record and not disputed. Further, it properly interpreted the applicable statutes and administrative regulations in concluding that Murray's separation was a voluntary quit without good cause disqualifying him for unemployment insurance benefits. *See* A.R.S. § 23–775(1).

In deciding whether Murray initiated the separation and whether he left for compelling personal reasons, the board relied on A.A.C. R6–3–50135, which provides in pertinent part:

H. Volunteering for layoff. When an individual volunteers or submits his name to be considered for a layoff or furlough due to a reduction in the work force, a decision must be made as to who initiated the action.

1. When an employer determines that a layoff is to occur and then inquires as to whether there are individuals who will

volunteer for the layoff, the separation is a discharge for nondisqualifying reasons.

2. When an employee requests or volunteers for layoff status prior to any specific announcement by the employer and the employer acts upon the request, the separation is a voluntary leaving which is disqualifying unless it can be established that the leaving was for compelling personal reasons.

This regulation was considered in *AT & T Information Systems v. DES*, 154 Ariz. 236, 741 P.2d 703 (App.1987). In that case, AT & T intended to reduce its work force by terminating 29 of the 94 employees in its Tucson office. To encourage voluntary terminations, AT & T offered the 94 employees a "Voluntary Income Protection Program" ("VIPP"), which provided the employee a lump-sum severance payment based on years of employment and various fringe benefits, including limited reimbursement for relocation, job training or job placement. Several employees not at risk for involuntary termination elected VIPP and then applied for unemployment benefits, which DES granted. The Appeal Tribunal found that all but one of these employees were eligible for benefits. The Appeals Board affirmed this decision and AT & T sought further review. This court relied on A.A.C. R6–3–50135(H)(1) to find that AT & T had initiated the separation, stating:

> When an employer announces a layoff, inevitably some employees will lose their jobs. The regulation finds the employer at fault whenever the employer initiates a layoff, regardless of whether an individual employee subsequently volunteers for the layoff that the employer has determined will occur.

*Id.* at 237–38, 741 P.2d at 704–05.

However, unlike AT & T, Digital had not announced a layoff prior to offering the program. While Digital had a target number of employees, it did not announce that, if short of its goal, employees would be involuntarily terminated. Indeed, Digital's personnel consultant testified at the hearing that when the plant manager announced the program, he made clear that this was not a layoff. He further testified that as of the hearing date, approximately seven months after Murray's separation, no employees had been laid off and there had not been a layoff at the Phoenix plant or nationwide during his ten-year period at Digital. He did mention that redeploying employees to other Digital facilities or reassigning them within the Phoenix facility might be necessary. Further, Murray testified that he had accepted the severance offer because of his unhappiness at Digital and not because he was "baited" with money. Therefore, R6–3–50135(H)(1) is inapplicable.

Murray also is disqualified from receiving unemployment benefits under A.A.C. R6–3–50135(H)(2) unless he established that he left for "compelling personal reasons." The Appeals Board found that he had not established such a reason. We agree. Murray testified that he reported to the personnel office conflicts with his supervisor and that his supervisor had threatened his job, although he had not received an official verbal warning. However, Murray later testified that he did not perceive his job to be in jeopardy and that, but for the program, he would have remained at Digital. The personnel consultant testified that no other employees in Murray's group complained about dissension or personal problems and that he was unaware of any "internal strife" and unhappiness. Therefore, the record supports the board's conclusion that Murray left Digital for reasons other than compelling personal ones.

The Appeals Board also relied on A.A.C. R6–3–50515 to find that Murray had not established good cause for voluntarily leaving because of an intolerable working condition. The relevant portion of this regulation requires an employee who leaves due to a disagreeable relationship with another employee to establish that the conditions were so unpleasant that continued employment would create a severe nervous strain or a physical altercation, or subject the employee to extreme verbal abuse, profanity or physical attack. A.A.C. R6–3–50515(C)(1), (2); *see* A.A.C. R6–3–50190(B)(2)(b). Murray also failed to carry

his burden in this regard. Although he testified that he had sought counseling from a Digital personnel representative, he also stated that he did not seek medical or psychological assistance for his work-related stress. Without specific evidence that continued employment created a severe nervous strain or that he was subjected to verbal abuse, profanity or physical attacks, *see* A.A.C. R6–3–50515(C)(1), (2), the record supports the board's conclusion that Murray failed to establish good cause for his voluntary separation.

The decision of the Appeals Board denying Murray unemployment insurance benefits is affirmed.

JACOBSON and GERBER, JJ., concur.