IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**PEDRO RIVERA BARRIGA,**
*Appellant,*


*v.*


**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, AN AGENCY,**


**AND**


**PRECISION AUTO BODY, LLC,**
*Appellees.*

---

No. CV-22-0231-PR
Filed January 26, 2024

---

Appeal from the A.D.E.S. Appeals Board
No. U-1696238-001-B
**AFFIRMED**


Opinion of the Court of Appeals, Division One
254 Ariz. 85 (App. 2022)
**VACATED**

---

COUNSEL:

Kristin K. Mayes, Arizona Attorney General, Drew C. Ensign, Section Chief Civil Appeals, Emily M. Stokes (argued), Assistant Attorney General, Phoenix, Attorneys for Arizona Department of Security

Katharine Myers (argued), Jaburg & Wilk, P.C., Phoenix, Attorney for Pedro Rivera Barriga

Pamela Bridge, Community Legal Services, Phoenix; Charles W. Doughty, DNA People's Legal Services, Flagstaff; Anthony L. Young, Southern Arizona Legal Aid, Tucson; Andrew P. Schaffer, Brenda Muñoz Furnish, Michelle Johnson Simpson, William E. Morris Institute for Justice, Phoenix, Attorneys for Amici Curiae Community Legal Services, DNA People's Legal Services, Southern Arizona Legal Aid, and the William E. Morris Institute for Justice

———————————

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, LOPEZ, MONTGOMERY, and KING joined.

———————————

JUSTICE BEENE, Opinion of the Court:

¶1        The Arizona Department of Economic Security ("ADES") extends unemployment benefits to certain workers who quit their jobs for good cause. *See* A.R.S. § 23-775(1). "Good cause" is defined by regulation. *See, e.g.*, Ariz. Admin. Code R6-3-50210. These same regulations also provide factors to determine whether a worker has established that "inharmonious relations with a fellow employee" constituted an "intolerable work situation" that created good cause to quit. R6-3-50515(C)(1), (2).

¶2        When a worker files for unemployment benefits, an ADES deputy makes an initial determination regarding the worker's eligibility. A.R.S. § 23-773(A). This determination may be appealed to an appeals tribunal, where an administrative law judge ("ALJ") may take testimony and admit evidence in reviewing the deputy's determination. A.R.S. §§ 23-674, -773(B); R6-3-1503. The ALJ's decision may be further appealed to the ADES Appellate Services Administration Appeals Board (the "Appeals Board"). R6-3-1504. Finally, the Appeals Board decision may itself be reviewed by the Arizona Court of Appeals. A.R.S. § 41-1993(B).

¶3　　　　To resolve this case, we must determine (1) whether the "intolerable situation" factors provided in R6-3-50515(C)(2) are exhaustive and (2) whether § 41-1993(B) bars a party from raising an issue that was not included in the petition for review before the Appeals Board. For the reasons set forth below, we vacate the court of appeals' opinion and affirm the Appeals Board's decision.

**BACKGROUND**

¶4　　　　Pedro Barriga began work at Precision Auto Body, LLC ("Precision") in February 2020 as an auto detailer. The shop area in which he worked was cooled by three mobile evaporative coolers. Precision placed these coolers in a central position, but one of Barriga's coworkers regularly moved one of the coolers to reduce the temperature at his workstation. This irritated Barriga, so he repeatedly repositioned the cooler, aiming it toward his own workstation. This, in turn, upset Barriga's coworker. Despite both men's irritation, Barriga never felt threatened by his coworker, nor did the disagreement ever result in verbal or physical conflict. Instead, the two men alternately moved the cooler between their respective workstations throughout the day.

¶5　　　　Barriga complained to his supervisor about the ongoing dispute over the cooler's placement. His supervisor, however, admonished both Barriga and his coworker for moving the cooler from its designated position. Barriga found this unfair and thought that his supervisor favored his coworker. Barriga claims the dispute over the cooler and his supervisor's favoritism were especially upsetting because he suffers from a medical condition which necessitated his use of the cooler—though he did not disclose this medical condition to his supervisor.[1]

---

[1]　Barriga later claimed to have mentioned his medical problem to a supervisor but did not provide ADES with any substantiating details or supporting evidence. Conversely, Precision claims that Barriga never informed the company of any medical issues during the term of his employment. After a hearing, an ALJ accepted Precision's version of events

¶6　　　　　After discussing the issue of the cooler's placement on two occasions with his supervisor, Barriga quit and applied for unemployment benefits with ADES.  In his application, Barriga claimed to have quit in response to his supervisor's "discriminatory" refusal to address Barriga's complaint.  Barriga's application did not mention the dispute with his coworker or refer to the existence of any medical conditions.

¶7　　　　　Precision challenged Barriga's benefits application, and an ADES deputy determined that Barriga was ineligible to receive benefits because he quit without good cause.  Specifically, the deputy concluded that Barriga did not prove that he was working in an intolerable situation. Barriga appealed, and a hearing was held before an ALJ.  The ALJ reversed the deputy's determination and ruled that Barriga had quit for good cause. Relying on R6-3-50210(C) and R6-3-50515(C), the ALJ concluded that Barriga quit for good cause because Barriga believed his supervisor was ignoring his complaints, resulting in an "inharmonious environment that created an intolerable working relationship."

¶8　　　　　Precision appealed the ALJ's decision to the Appeals Board. The Appeals Board disagreed with the ALJ's application of R6-3-50515(C). Instead, the Appeals Board interpreted R6-3-50515(C)(2) as providing only two factors to determine whether an intolerable work situation existed: (1) continued employment would cause a severe nervous strain or a physical altercation; or (2) the worker was subjected to extreme verbal abuse or profanity.  The Appeals Board reasoned that, because Barriga did not claim to have suffered verbal abuse, physical abuse, or severe nervous strain, the working conditions at Precision did not rise to the level of an intolerable work situation.  And because the work situation at Precision was tolerable, Barriga's "inharmonious relations" with his supervisor and coworker were

and found that Barriga "never disclosed the [medical condition] and the perceived medical need for cooling."  The ALJ's findings are supported by the record, and Barriga did not challenge them on appeal.  Accordingly, the Appeals Board and court of appeals accepted ADES's fact findings.  So, too, do we. *See Rosas v. Ariz. Dep't of Econ. Sec.*, 249 Ariz. 26, 28 ¶ 8 (2020) ("We defer to the agency's fact findings . . . .").

not sufficiently unpleasant to establish good cause to quit. Accordingly, the Appeals Board reversed the ALJ's decision and disqualified Barriga from benefits.

¶9 Barriga appealed. In the court of appeals, Barriga asserted two reasons why he should be eligible for unemployment benefits. First, Barriga argued that he had good cause to quit his job because—contrary to the Appeals Board's interpretation—the factors in R6-3-50515(C)(2) are merely examples of intolerable work situations. *Barriga v. Ariz. Dep't of Econ. Sec.*, 254 Ariz. 85, 88 ¶ 13 (App. 2022). Barriga explained that, if the factors in R6-3-50515(C)(2) are non-exhaustive, the inharmonious relationship among himself, his supervisor, and his coworker may have been unpleasant enough to create an intolerable work situation. *Id.*

¶10 Second, Barriga argued—for the first time—that even if he did not quit for good cause under R6-3-50515(C), he still qualified for benefits because he quit for health-related "compelling personal reasons" under R6-3-50235(A) and (B). *See id.* at 90 ¶ 20. In support of this second argument, Barriga relied on his testimony before the ALJ that he could not work in a hot environment without becoming dehydrated because of his medical condition. *Id.* at 90 ¶ 22. He also referred to a February 12, 2021 letter from his doctor. *Id.* This letter, which post-dated his separation from employment by almost nine months, was briefly mentioned during the hearing before the ALJ, but was not submitted in time to be considered by the tribunal.

¶11 The court of appeals vacated the Appeals Board's decision, interpreting the factors in R6-3-50515(C)(2) as non-exhaustive and remanding the case to determine whether Barriga had "compelling personal reasons to quit due to a health or physical condition." *Id.* at 91 ¶¶ 25–26. Precision and ADES requested review from this Court.

¶12 We granted review to clarify workers' eligibility for unemployment benefits for "intolerable work situations" and whether § 41-1993(B) precludes a party from raising issues in the appeal of unemployment benefit determinations, recurring issues of statewide

concern. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶13** We interpret statutes and administrative rules de novo. *Saguaro Healing LLC v. State*, 249 Ariz. 362, 364 ¶ 10 (2020). "We do not defer to the agency's interpretation of a rule or statute." *Id.*; *accord BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 21 ¶ 17 (2018) (declining to adopt agency interpretation). In interpreting statutes and administrative rules, we look first to the text itself, applying common and ordinary meanings. *See State v. Green*, 248 Ariz. 133, 135 ¶ 8 (2020).

## I.

**¶14** In the unemployment context, every separation from employment is classified as a "quit" or a "discharge." R6-3-50135(A)(1). If a worker quits with "good cause," the worker may be entitled to unemployment benefits. § 23-775(1). Workers who quit because working conditions were "substantially below those prevailing in the area for similar work" have quit with good cause. R6-3-50515(A)(2); *accord* R6-3-50515(D)(1). This is an objective standard. R6-3-50515(A)(2), -50210(A). Importantly, to establish good cause, a worker must attempt to "adjust his grievance prior to leaving," R6-3-50515(A)(4), by informing the employer "of the precise nature of the complaint" and giving the employer "a reasonable opportunity to investigate and decide whether corrective measures are needed." *Bowman v. Ariz. Dep't of Econ. Sec.*, 182 Ariz. 543, 545 (App. 1995).

**¶15** The term "working conditions" includes a worker's relations with coworkers and supervisors, both of which are assessed using the same standard. R6-3-50515(C), (F). Inharmonious relations between fellow employees may result in working conditions that fall substantially below prevailing norms—and thus establish good cause to quit. *See Bowman*, 182 Ariz. at 545. Section R6-3-50515 offers guidelines for determining whether working conditions in this context become objectively intolerable. These

guidelines apply to relations between fellow employees and supervisors and read, in relevant part:

> 1.   A worker who leaves because of inharmonious relations with a fellow employee leaves with good cause if he is [sic] established that the conditions were so unpleasant that remaining at work would create an intolerable work situation for him.

> 2.   In determining whether a situation is intolerable, the following factors should be considered:

> a.   Would continued employment create a severe nervous strain or result in a physical altercation with the other employee?

> b.   Was the worker subjected to extreme verbal abuse or profanity? The importance of profane language as an adverse working condition varies in different types of work.

R6-3-50515(C)(1)–(2); *see also* R6-3-50515(F).

**¶16**          R6-3-50515(C) clearly and unambiguously addresses fellow-employee relations.  Though other subsections in R6-3-50515 address working conditions more broadly, the conditions described in subsection (C) only address interactions between coworkers.  Subsection (C)(1) justifies a worker's decision to quit a job when "inharmonious relations *with a fellow employee*" become "so unpleasant that remaining at work would create an intolerable work situation."  R6-3-50515(C)(1) (emphasis added).  In other words, subsection (C)(1) covers workers who quit a job because tension with another employee created an unbearable work situation.  *Cf. Intolerable*, Merriam-Webster, https://www.merriam-webster.com/dictionary/intolerable (last visited Jan. 10, 2024) (defining "intolerable" as "unbearable").  Subsection (C)(2) provides two factors that should be considered when deciding whether a work situation with a fellow employee was intolerable.  When read together, the subsections refer only to working conditions related to coworker relations.  Accordingly, we

7

disagree with the court of appeals' suggestion that situations like poor sanitation in the workplace might lead to an intolerable work situation under R6-3-50515(C). *See Barriga*, 254 Ariz. at 89 ¶ 16. The plain meaning of subsection (C) only encompasses fellow-employee relations.

**¶17** We agree, however, with the court of appeals' conclusion that R6-3-50515(C)(2) does not "cover the entire universe of circumstances that could constitute an intolerable work situation." *See Barriga*, 254 Ariz. at 89 ¶ 17. Nothing in either subsection indicates that the factors in R6-3-50515(C)(2)(a) and (b) are exhaustive. The language in subsection (C)(2) does not limit what factors may be considered when deciding whether a situation is intolerable. On the contrary, it merely lists two factors that "*should* be considered." R6-3-50515(C)(2) (emphasis added). Indeed, if we were to interpret the list as exhaustive, it would render subsection (C)(1) largely superfluous. If subsection (C)(2) enumerated the only ways in which an employee could establish an intolerable work situation, inquiring whether "conditions were so unpleasant" under (C)(1) would be unnecessary. Instead, the only inquiry would be whether severe nervous strain, physical altercation, or extreme verbal abuse were occurring. Though it is difficult to imagine intolerable situations that do not involve one of the listed factors, we will not interpret the rule in a way that renders subsection (C)(1) nugatory. *See Garcia v. Butler*, 251 Ariz. 191, 194 ¶ 12 (2021).

**¶18** We therefore conclude that the two factors listed in subsection (C)(2) are not exhaustive. Further, we agree with the court of appeals that *Murray v. Arizona Department of Economic Security*, 173 Ariz. 521, (App. 1992) misconstrued R6-3-50515(C). *See Barriga*, 254 Ariz. at 88–89 ¶¶ 17–18. *Murray* suggested that subsection (C)(2) requires a worker to either "establish that the conditions were so unpleasant that continued employment would create a severe nervous strain or a physical altercation," or that continued employment would "subject the employee to extreme verbal abuse, profanity or physical attack." 173 Ariz. at 523. Because subsection (C)(2)'s factors are not exhaustive, we disapprove of *Murray* to the extent it holds otherwise. Factors not specified in the rule may be considered when determining whether a work situation is intolerable under R6-3-50515(C)—provided, however, the factors

demonstrate that "inharmonious relations" among employees created conditions "so unpleasant that remaining at work would create an intolerable work situation." *See* R6-3-50515(C)(1).

**¶19** Though the Appeals Board interpreted R6-3-50515(C)(2)'s factors as exhaustive, we nevertheless affirm its ruling. *See Bowman*, 182 Ariz. at 545 ("We will affirm the Appeals Board's decision if it is supported by any reasonable interpretation of the record."). We agree with the ADES deputy and the Appeals Board that the conflict between Barriga and his fellow employee was not sufficiently egregious to establish an intolerable work situation. Although the factors in R6-3-50515 are not exhaustive, Barriga nevertheless failed to present evidence of any similar, unbearable condition to establish an intolerable work situation. A dispute about the placement of a cooler between two workspaces that a supervisor resolves in favor of one employee may create an unpleasant working environment, but it is not intolerable as contemplated by the rule.

**¶20** We further agree with the ADES deputy that Barriga did not adequately attempt to adjust his grievance before leaving his employment. In some circumstances, a worker may quit with good cause without first attempting to resolve the grievance. *See* R6-3-50515(A)(4) (excusing workers from attempting to resolve their grievance if "such an attempt was not feasible"). This case is not such a circumstance. The conduct Barriga complains of—a supervisor's favoritism and a coworker's frustrating behavior—while unpleasant, constitutes a relatively common workplace disagreement. By his own admission, Barriga only attempted to address the dispute about cooler placement on two occasions. Additionally, although Barriga now alleges that he needed the cooler at his workstation for medical reasons, he did not inform Precision of this need nor give Precision a reasonable opportunity to investigate and rectify that grievance. Accordingly, because Barriga's workplace situation was not intolerable and because he did not adequately attempt to adjust his grievances before leaving, Barriga did not quit with good cause.

## II.

**¶21**        Workers who quit without good cause may still be eligible for unemployment benefits under a separate provision if they leave work because of a compelling personal reason related to health.  R6-3-50235(A), (B); *see also Munguia v. Dep't of Econ. Sec.*, 159 Ariz. 157, 163 (App. 1988).  Barriga raised a claim based on R6-3-50235(A) and (B) for the first time on appeal.  He argued that, even if he could not establish good cause for quitting, he was still eligible for benefits because he quit because of a compelling, health-related reason.  *Barriga*, 254 Ariz. at 90 ¶ 20.

**¶22**        ADES asserts, however, that the court of appeals did not have jurisdiction to address Barriga's health-related claim.  Specifically, ADES argues that § 41-1993(B) barred the court from considering Barriga's claim.  The statute reads, in relevant part:

> **B.**      Any party aggrieved by a decision of the appeals board may file an application for appeal to the court of appeals . . . . All appeals are limited to the record before the department unless the court orders otherwise. *An issue may not be raised on appeal that has not been raised in the petition for review before the appeals board.*

§ 41-1993(B) (emphasis added).  ADES contends that the court of appeals did not have jurisdiction to consider Barriga's claim because it was not "raised in the petition for review before the appeals board."    *See* § 41-1993(B).

**¶23**        Conversely, Barriga asserts that § 41-1993(B) does not operate as a jurisdictional bar to his claim because it only applies to the party that files the application for appeal, which in this case was Precision.  Barriga argues that under the statute, only the petitioning party is precluded from raising new issues at the court of appeals.  Under this interpretation, only Precision would be precluded from raising new issues at the court of appeals.

¶24 According to Barriga, ADES's interpretation of § 41-1993 is both illogical and unconstitutional. He argues that its interpretation is illogical because only one petition for review may be filed and limiting the contents of the petition in this manner would allow Precision to unilaterally dictate what issues could be heard at the court of appeals. And he argues that ADES's interpretation would render the statute unconstitutional because prohibiting him from raising his compelling personal reasons argument would violate due process by depriving him of the right to be heard "at a meaningful time and in a meaningful manner." *See Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)); *see also Gallarzo v. Ariz. Dep't of Econ. Sec.*, 245 Ariz. 318, 321 ¶ 9 (App. 2018) ("[T]hose who apply for an appeal under A.R.S. § 41-1993(B) have an interest that implicates due process.").

¶25 The court of appeals remanded this case, instructing the Appeals Board to consider Barriga's health-related claim under R6-3-50235 and ordering further fact finding on the issue, if needed. *Barriga*, 254 Ariz. at 90 ¶ 23, 91 ¶ 26. This was error, however, because Barriga did not preserve his health-related claim for appeal. *See Neal v. City of Kingman*, 169 Ariz. 133, 136 (1991) (explaining that appellants must raise an issue at an administrative hearing to preserve the issue); *see also* ¶ 5 n.1. Barriga did not mention any health conditions in his application for unemployment benefits, nor did he argue that he left employment because of a health condition until he sought review from the court of appeals. Though Barriga alluded to his perceived need for a cool working environment before the appeals tribunal, the ALJ found that Barriga never disclosed any health conditions to Precision during his employment. Barriga never disputed this finding and only claimed that his health condition made working in his overheated workplace intolerable *after* the Appeals Board's determination. At bottom, the issue of whether Barriga quit because of a health condition was not sufficiently raised in the record and was not part of the Appeals Board's review under A.R.S. § 23-672(C) (authorizing the Appeals Board to review a tribunal's record). Accordingly, Barriga waived this issue for the purposes of appellate review.

¶26 Because Barriga failed to preserve his health-related claim, we need not address his constitutional concerns. Section 41-1993(B)'s

purported jurisdictional bar did not prevent Barriga from raising this claim; he failed to preserve it. Here, Barriga's waiver is dispositive regarding his health-related claim, and therefore § 41-1993(B)'s scope of review is not implicated. Accordingly, we do not assess its constitutionality. *Cf. State ex rel. Napolitano v. Brown & Williamson Tobacco Corp.*, 196 Ariz. 382, 386 ¶ 16 (2000) (declining to reach secondary issues when primary issues are dispositive).

**¶27** Though we need not determine § 41-1993(B)'s constitutionality at this time, we note that the statute's limited scope of review may adversely affect a party's right to appeal under different circumstances. Section 41-1993(B) unambiguously prevents any party from raising an issue on appeal that was not raised in the petition for review before the Appeals Board. Thus, the petition filed by an adversely affected party at the tribunal stage controls the scope of the issues that the court of appeals may consider. If the prevailing party properly preserves a claim but is precluded from raising that claim on appeal because of § 41-1993(B)'s limited scope of review, that party may be deprived of the opportunity to challenge errors made by the Appeals Board because it is procedurally impossible for the prevailing party to raise an issue in the petition for review. This potential dichotomy implicates due process. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong*, 380 U.S. at 552)). We urge the legislature to act to ensure that § 41-1993(B)'s scope of review does not run afoul of the fundamental requirements of due process.

## CONCLUSION

**¶28** We conclude that the "intolerable situation" factors provided in R6-3-50515(C)(2) are not exhaustive. Nevertheless, for the foregoing reasons, Barriga is ineligible for unemployment benefits. Accordingly, we vacate the court of appeals' opinion and affirm the Appeals Board's decision disqualifying Barriga from benefits.